Jan T. NEWMAN, Guardian of William C. King, III, et vir, Petitioners,

v.

William C. KING, Jr., Respondent.

No. B–600.

Supreme Court of Texas.

May 8, 1968.

Dissenting Opinion and Rehearing Denied July 24, 1968.

Lang, Cross, Ladon, Oppenheimer & Rosenberg, Bernard Ladon, San Antonio, for petitioners.

Trueheart, McMillan, Russell & Hoffman, K. Key Hoffman, Jr., San Antonio, for respondent.

CALVERT, Chief Justice.

This appeal arises out of a special proceeding, filed pursuant to authority conferred by Article 5929, to change the name of a minor. The application was filed by William C. King, III, acting by and through his mother, Jan T. Newman, who was joined in the proceeding by her husband, Harry E. Newman. The application sought a change of the minor's name to John Tracy Newman. The minor's natural father, William C. King, Jr., intervened in the proceeding and contested the application. In a trial before the court, sitting without a jury, judgment was entered changing the minor's name from William C. King, III, to John Tracy Newman, and adjudicating certain other matters not involved on appeal. William C. King, Jr. appealed. The court of civil appeals reversed the judgment of the trial court and remanded the cause for a new trial. 421 S.W.2d 149. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

■ The court of civil appeals reversed the trial court's judgment because of the failure of that court to appoint a guardian ad litem to represent the minor in the hearing on the application. No complaint was made of the failure to appoint a guardian ad litem by either of the contending parents in either the trial court or the court of civil appeals. The right of an appellate court to reverse a trial court judgment on unassigned error is limited to situations in which the error can properly be classified as "fundamental error." Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947). The first question to be decided then is whether

failure of a trial court to appoint a guardian ad litem to represent a minor in a change-of-name proceeding is fundamental error.

Art. 5929, Vernon's Tex.Civ.Stats., provides:

"Whenever it shall be to the interest of any minor to change his name, the guardian or next friend of said minor shall file his application in the district court of the county of said minor's residence, alleging the reason for the change and giving the full name which the minor wishes to adopt. The judge of said court, if the facts alleged and proven satisfy him that such change will be for the benefit and interest of the minor shall grant authority to change his original name and adopt another."

Rule 44, in so far as is relevant, provides: "Minors * * * who have no legal guardian may sue and be represented by 'next friend' under the following rules: (1) Such next friend shall have the same rights concerning such suits as guardians have * * *."[1] Rule 173 provides:

"When a minor * * * may be a defendant to a suit and has no guardian within this State, or * * * is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor * * *, the court shall appoint a guardian ad litem for such person * * *."

■■ Under the quoted provisions of Art. 5929 and Rules 44 and 173, a change of name application may be filed on behalf of a minor by "next friend," who has all the rights concerning the proceeding that a guardian would have; and displacement of the next friend with a court appointed guardian ad litem, although mandatory when authorized, is authorized only when it "appears to the court" that the next friend has an interest "adverse to the minor." While caution would dictate the displace-

---

1. All references to Rules are to Texas Rules of Civil Procedure.

ment in every legal proceeding in which the pleadings or the evidence indicate a reasonable possibility of adverse interest, an error in judgment by the trial judge in deciding the preliminary issue of adverse interest and in failing or refusing to make the displacement does not differ in ultimate effect from errors in judgment which a trial judge may make in deciding many other questions during the course of a trial. While the two opinions in Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947), do not purport to particularize every error which will be regarded as fundamental, they do lay down general rules which we have recognized and followed in determining whether a judgment will be reversed on unassigned error. Error which directly and adversely affects the interest of the public generally was specifically held to be fundamental in Ramsey v. Dunlop. Error in assuming jurisdiction where none exists was held to be fundamental in McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957). On the other hand, errors occurring in the trial process have been consistently held not to be fundamental. See State v. Sunland Supply Co., Tex. Sup., 404 S.W.2d 316 (1966); Kimbrough v. Walling, Tex.Sup., 371 S.W.2d 691 (1963); St. Paul Fire & Marine Ins. Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); Texas Co. v. State, 154 Tex. 494, 281 S.W.2d 83 (1955); City of Deer Park v. State, 154 Tex. 174, 275 S.W.2d 77 (1955); Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187 (1949). Error in failing to appoint a guardian ad litem for a minor plaintiff who is represented by a regular guardian or next friend affects the rights of only the particular minor and the particular litigants; it does not adversely affect the interest of the public generally. Neither does it deprive the court of jurisdiction, once obtained, to proceed to judgment in the case. We hold, therefore, that the court of civil appeals erred in reversing the trial court's judgment because of failure of that court to appoint a guard-

ian ad litem for the applicant, William T. King, III.

The only case cited by the court of civil appeals which bears a close relationship to the problem of fundamental error is Cooper v. Liverman, 406 S.W.2d 927 (Tex.Civ.App. —Texarkana 1966, no writ). Reversal of the trial court's judgment in that case because of failure to appoint a guardian ad litem was based upon a proper assignment of error. In this case no such point of error was presented to the court of civil appeals.

We granted writ of error in this case primarily to consider and decide the question of fundamental error. William T. King, Jr., as appellant, had five points of error before the court of civil appeals. All of the points raise questions of law which this court has jurisdiction to decide.

■ Two of the points of error assert that the judgment of the trial court deprives the appellant and his child of a property right in the name of William T. King, III, without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and § 19, Art. 1 of the Constitution of Texas, Vernon's Ann.St. There was no denial of procedural due process in this case as there was in Armstrong v. Manzo, 380 U.S. 545, 85 S. Ct. 1187, 14 L.Ed.2d 62 (1965), an adoption case. In this case the father had notice of the hearing on the application and participated fully therein. The contention seems primarily to be that there are constitutional prohibitions against taking the name of a natural father away from his child unless the father's conduct has been such as to forfeit his right to have his child bear it. We know of no cases so holding and have been cited to none. In Matter of Thomas, 404 S.W.2d 199 (Mo. 1966), the Supreme Court of Missouri held, contrary to an appellant's contention, that a judgment of a trial court changing the surname of the appellant's son did not constitute a denial of rights guaranteed by the Fourteenth Amendment and by the Consti-

tution of Missouri. In the instant case the trial court ordered the child's name changed upon express findings that the change was in the best interest of the child. We hold that the judgment does not violate constitutional rights of either the father or the child.

The other three points of error assert, in one form or another, that the trial court abused its discretion in ordering the child's name changed. Argument under these points presents two basic reasons for contending that the trial court's action represents an abuse of discretion, viz.: (1) the evidence does not show that the right to have the child bear his natural father's name had been forfeited by misconduct or unfitness on the part of the father, and (2) certain conduct on the part of the mother and stepfather establishes that the change of name is not in the child's best interest.

■ Aside from his argument relating to constitutional rights, the father does not question that the basic consideration in a proceeding of this character is the best interest of the child. It is made so by the provisions of Art. 5929, and it would be so in any event in the absence of a restraining statute. The courts have generally recognized that a protesting father has a protectible interest in having his child bear his surname, and they will exercise the power to change the name reluctantly and only where the substantial welfare of the child requires the change. See 53 A.L.R.2d 914.

The evidence in the record before us is reviewed in some detail in the opinion of the court of civil appeals and need not be set out here at length. The child was born on May 27, 1959. The mother and father of the child were divorced on May 22, 1961, when the child was only two years of age. Custody was awarded to the mother. The father was given visitation rights and was required to make monthly support payments, an obligation he has faithfully discharged. The mother married Harry E. Newman on August 22, 1961, and the child

has lived in their home at all times since that date. He was nearly seven years old at the time of trial. A daughter was born to the Newmans on June 21, 1962, and a son was born to them on November 7, 1963. The trial court found that the only name the child has ever called himself since he learned to talk is John Tracy Newman, and he is so called by the Newmans, his half-brother and half-sister, his playmates, his school teachers, his Sunday school teachers, and all other people with whom he has come into contact; the child has always referred to Harry E. Newman as his father; there exists a warm and loving relationship between the child and his mother, stepfather, half-brother and half-sister, as well as with the parents of the stepfather; it would be humiliating, embarrassing, confusing, and, in reasonable probability, disruptive in his home life as well as his associations for him to go by one name when all the members of his immediate family go by another name; and that "the impact of now calling him William C. King, III, instead of the only name he has been called practically all of his life, to wit: John Tracy Newman, might, in all reasonable medical probability, have a detrimental effect on his personality as he grows older." These findings are not attacked on appeal as having no support in the evidence. See Cowling v. Colligan, 158 Tex. 458, 312 S.W. 2d 943, at 948 (1958). Finally, the trial court found and concluded upon "full and satisfactory evidence" that the best interest of the child would be served by changing his name.

The trial court's finding that failure to change the child's name might have a detrimental effect on his personality as he grows older was based on the testimony of a doctor who had been the child's pediatrician since his birth and the testimony of a child psychologist. The pediatrician testified that there is "quite a bit of emotional trauma to a child when he suddenly finds out * * * that he doesn't have the same name as the family. * * *" The child psychologist testified that he thought it "psychologically * * * possible and

probable that there will be some impairment to the child if his name is changed [back to William C. King, III]."

██ Fully appreciating the wish of a father that his son continue to bear his name, we nevertheless cannot hold on the record before us that the trial court abused its discretion in ordering the name change in this case. With the trial court's judgment supported by evidence which the trial judge found to be "full and satisfactory," its exercise of discretion cannot be overthrown by the father's deep-seated and understandable wish that his son continue to bear his name or by the fact that he has been guilty of no misconduct which would bring the name into disgrace or disfavor. Neither, we add, should it be overthrown by the fact that the mother had the child baptised in the name of John Tracy Newman in 1963 and registered him in school in that name in 1964, 1965 and 1966 when his legal name was William T. King, III, and on each occasion gave the name of his father as Harry E. Newman. These were but some of the facts and circumstances to be considered by the trial judge in deciding whether the best interest of the child required that his name be changed.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

SMITH, J., notes his dissent.

### DISSENTING OPINION

On Motion for Rehearing

SMITH, Justice.

The opinion of this Court was originally delivered on May 8, 1968. At that time, my dissent was noted. Motion for rehearing has been filed by the respondent. I now state the reasons for disagreeing with the holding of the Court. These reasons are well stated in the motion for rehearing.

This suit was one affecting the relationship of the child to its parents. The conflict of interest is apparent on the face of the record. The Newmans' petition for change of name shows on its face that they acted in violation of the child's rights and the rights of its natural father by acting to change the name of the child without notice and without filing an application as is mandatory under Article 5929 V.A.C.S. Mrs. Newman and Mr. Newman were, on the face of the petition, seeking to deprive the child of his property right in and to his name and also seeking to deprive him of a relationship to his parent. Therefore, on the face of the record it is apparent that the petition did not make the minor child a party to the suit. The defect is fundamental error. In Sandoval v. Rosser, 86 Tex. 682, 26 S.W. 933, 934 (1894), the Court said: "If, however, the language [of the petition] were such as to make the minor parties (sic) to the suit, under ordinary circumstances, *it could not have the effect in this case, for the reason that the guardian was adversely interested,* and he could not maintain a suit for himself personally against himself as guardian." (Emphasis added.) See Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.Sup.1966).

The child and the Newmans were indispensable parties to this lawsuit. As stated in Application of Gault, 387 U.S. 1, 81, 87 S.Ct. 1428, 1471, 18 L.Ed.2d 527: "Similarly, due process clearly requires timely notice of the purpose and scope of any proceeding affecting the relationship of parent and child. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62."

The error herein is fundamental not only because the trial court lacked jurisdiction but also because it was contrary to public policy as defined in both the Federal and State Constitutions.

The Court overlooks the basic tenets set forth in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62, when it comments that "[t]here was no denial of procedural due process in this case as there was in Armstrong v. Manzo * * * an

adoption case. In this case the father had notice of the hearing on the application and participated fully therein." The Court misses the point; the *question here deals with the child's rights*, not the father's.

The Court in *Armstrong*, supra, stated it was *elementary* and *fundamental* that interested parties be afforded an *opportunity to present their objections*. It further stated:

"A fundamental requirement of due process is 'the opportunity to be heard.' * * * [i]t is an opportunity which *must be granted at a meaningful time* and in *a meaningful manner*."

In Linebaugh v. Atwater, 173 Ill. 613, 50 N.E. 1004, 1006, the Supreme Court of Illinois in an instance wherein there was a conflict of interest between a father and his children stated:

"We cannot consent to pass upon their rights in the present condition of the record. *They should be represented* and *have a fair hearing*, with an *opportinity to introduce testimony*."

It is beyond question that a person non sui juris represented by a next friend whose interest conflicts *does not have an opportunity to present his objections* and *is not heard in a meaningful manner*.

Indeed, the child here is not only deprived of procedural rights, he is denied a substantive right, the right to be "heard."

This Court's statement, therefore, that "no complaint was made of the failure to appoint a guardian ad litem in either the trial court or the court of civil appeals" is irrelevant. *It was the child's right* and *he had no opportunity to object or assign error*.

The Court's reference to Cooper v. Liverman, Tex.Civ.App., 406 S.W.2d 927, emphasizes the error it has committed. The Court has stated that the child's rights are won or lost by virtue of the acts of the other parties to the suit. Since, however, the Court cites Cooper v. Liverman, supra,

with approval, it would appear that the Court does not consider the question of the conflict "appearing" to the trial court as controlling. The Court in Cooper v. Liverman, supra, at page 931 states:

"We hold that under such circumstances, even though the matter was not called to the attention of the trial court, that nevertheless a guardian ad litem should have been appointed to represent the interests of said minors."

In Greathouse v. Fort Worth & Denver City Ry. Co., 65 S.W.2d 762, 765 (Tex.Com. App.), this Court stated:

"The minor was not bound by the failure of the next of friend to appeal."

In the instant case, where the conflict is apparent on the face of the record, why should the child be bound by the failure of the next friend to assign her own conflict as error?

In *Greathouse*, supra, the Court states:

"The guardian ad litem or next friend can make no concessions nor can he waive or admit away any substantial rights of the minor, or consent to anything which may be prejudicial to him."

Yet we have the next friend asserting and this Court holding, pursuant to the assertion by the next friend, that the failure to object to the conflict or assign it as error on appeal is fatal to the child. This is indeed an anomalous situation. On the other hand, this Court holds that the right of appeal is constitutional, that it does not depend on statute. Board of Firemen's Relief and Retirement Fund Trustees of Texarkana v. Hamilton, 386 S.W.2d 754, 755 (Sup.).

But how is a child represented by a next friend whose interests conflict to exercise this right? Indeed, we must pity him because *"he is non sui juris and altogether under the Court's protection." Greathouse*, supra. Yet this Court holds the error of the trial court in failing to displace a next friend whose interest conflicts with a minor

"does not differ in ultimate effect from errors in judgment which a trial court may make in deciding many other questions during the course of a trial."

I cannot see how this Court can say that the child must be denied the consequences of the error because not raised in the trial court or assigned in the appellate court by the other parties to the suit? He had no one to represent him individually to raise the error. It does differ from other errors in "ultimate effect" because a sui juris person can waive, whereas a non sui juris person has no control. This error goes to the very foundation of his right to protect himself from the "ultimate effect' of other errors.

Who is to protect the minor? This Court forecloses a minor's most fundamental rights. It turns his incapacity in upon him to his destruction. The other parties do not object or assign, and the trial court errs, and that's the end of it. I respectfully submit that the trial court should have appointed a guardian ad litem then, and this Court should reverse now. Nothing less would satisfy the constitutional mandate of a meaningful hearing at a meaningful time. Armstrong v. Manzo, supra.

In Armstrong v. Manzo, supra, the Court stated:

"For 'it is plain that where the burden of proof lies may be decisive of the outcome.' "

The Court in our case has denied to all non sui juris persons represented by an incompetent person whose conflict of interest is apparent on the face of the record the protection of the Courts. The Court has denied the child involved here the right to be heard at a meaningful time and in a meaningful manner. The very nature and substance of this Court's holding makes relevant its applicability and effect on all persons non sui juris.

In Hovey v. Elliott, 167 U.S. 409, 417–418, 17 S.Ct. 841, 844, 42 L.Ed. 215, it is stated:

"*Can it be doubted that due process of law signifies a right to be heard in one's defense?* If the legislative department of the government were to enact a statute conferring the right to condemn the citizen without any opportunity whatever of being heard, would it be pretended that such an enactment would not be violative of the Constitution? *If this be true, as it undoubtedly is, how can it be said that the judicial department—the source and fountain of justice itself—has yet the authority to render lawful that which, if done under express legislative sanction, would be violative of the Constitution. If such power obtains, then the judicial department of the government, sitting to uphold and enforce the Constitution, is the only one possessing a power to disregard it. If such authority exists, then, in consequence of their establishment, to compel obedience to law, and to enforce justice, courts possess the right to inflict the very wrongs which they were created to prevent.*" (Emphasis added).

In Galpin v. Page, 85 U.S. (18 Wall.) 350, p. 368, 21 L.Ed. 959, the court said:

"It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has *been afforded an opportunity to be heard.* Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is justly administered." (Emphasis added by the Court.)

This Court states that it is "mandatory" that a guardian ad litem be appointed when there is a conflict of interest between the person non sui juris and guardian or next friend. In the next breath it wipes out meaningful judicial protection from judicial error. Public policy, therefore, as expressed by Rule 173 appears meaningless.

This is not a case in which the child is being taken away from its parent because of misconduct on the part of the child. There is no such issue here. Yet, even if there were such an issue, the child would be entitled to counsel in all of his basic rights in due process as pointed out in Application of Gault, 387 U.S. 1, 35–42, 87 S.Ct. 1428, 1448–1451, 18 L.Ed.2d 527. Nor is this a case where the father is guilty of inattention or misconduct as to justify such a sundering. This Court, without benefit of counsel for the child, splits the unoffending child from the unoffending parent and grants the tie of identity to a third party.

In the matter of Guardianship of Faust, 239 Miss. 299, 123 So.2d 218, 219–220, the Supreme Court of Mississippi cited Bryant v. Brown, supra, 151 Miss. 398, 118 So. 184, 60 A.L.R. 1325, and stated:

"*Unless a parent has forfeited the right* by misconduct or unfitness, he or she has the right to control the education and religious training of the child. *The Federal and State Constitutional guarantees* of liberty include not only the right to establish a home and bring up children * * *"

and at page 221:

"The agencies of our democratic government are obligated to preserve that right, *which is not recognized in a totalitarian society.*"

Constitutional grounds are plainly in issue where an unoffending child and unoffending parent's relationship is granted to a third party, whether the superficial characterization of the matter is change of name or otherwise.

The plain sense of the matter stated above on constitutional grounds is reiterated and stated on substantive grounds in Payne v. Jones, 415 S.W.2d 57 (Sup.Ct. Ark.1967), wherein the Supreme Court of Arkansas stated:

"* * * the right of natural parents to the custody of their children, as against strangers, is 'one of the highest natural rights, and the state cannot interfere with this right simply to better the moral and temporal welfare of the child as against the unoffending parent.'"

If a parent has no more than a "protectible interest" in a child, then indeed the State may act to sever the relations of an unoffending parent and unoffending child in favor of a third party or the State on the relative ground of best interest. As stated before, this is indeed the theory of totalitarian states.

Under this theory the child ceases to be the natural extension of the parent and becomes a vassal of the State whose familial relationship is to be subordinated to his best interest, which best interest is to be determined by the State or judge accordingly as he is satisfied by the evidence as to where the best interest lies, based upon current State values.

The Court overlooks the fact that it is not simply dealing with a change of name, but instead more essentially and basically with the relationship of a parent and child. It is severing the identity of the child and the parent and granting the association to a third party. The Court has indeed confused the priority of interests. The State has the protectible interest, the parent and child the higher constitutional interest. The protectible interest of the State is exercised through the police power which cannot be used to positively destroy the familial relationship where there is no unfitness or abandonment. It can be used to correct abuses. The judgment of the Court of Civil Appeals should be affirmed.

HAMILTON, J., joins in this dissent.