**R. A. M., a juvenile, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 16322.

Court of Civil Appeals of Texas, San Antonio.

April 2, 1980.

Bennett & Leger, John H. Leger, San Antonio, for appellant.

Bill M. White, Criminal Dist. Atty., Michael P. Peden, Raymond C. Angelini, Alan E. Battaglia, Asst. Dist. Attys., Bexar County, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

R____ A____ M____, a juvenile, appeals from orders of the juvenile court of Bexar County adjudging him to be a delinquent child, and committing him to the custody of the Texas Youth Council for a period not extending beyond his 18th birthday.

The record before us discloses a series of unusual, if not unique, circumstances. The confusion concerns the nature of the offense which the jury found appellant had committed and on which the conclusion that appellant had engaged in delinquent conduct is based.

The first paragraph of the petition filed by the State alleges that appellant engaged in delinquent conduct by committing the offense of arson as the crime is defined in Tex.Penal Code Ann. § 28.02 (Vernon 1974). The second paragraph alleges that appellant had engaged in delinquent conduct by committing the crime of burglary, as defined in § 30.02, in that, with intent to commit arson, he entered a building which was not a public building without the effective consent of the owner.

The prosecutor, in reading the petition to the jury, identified that portion of the petition alleging that appellant committed arson as "Paragraph one." He then continued, "Two, that on or about the 8th day of October, 1978, A.D.," appellant committed the crime of burglary. The court's charge to the jury, after reciting that appellant was charged with arson, contained the usual instructions, including reference to the presumption of innocence and the requirement that the State prove all elements of the offense charged beyond a reasonable doubt. The charge also instructed the jury on the law of parties to crime as that law is set forth in § 7.02 of the Penal Code.

The charge then defined the offense of arson, instructing the jury that a person commits an offense "if he starts a fire without the effective consent of the owner, with intent to damage or destroy the owner's building." The court also informed the jury that the burden was on the State to prove beyond a reasonable doubt "that there was a fire set with intent to destroy or damage the property, and, in addition, the State must prove beyond a reasonable doubt, that the accused was a party to the crime of arson as defined." The charge then defined the terms found in the statutory definition of the crime of arson ("building", "consent", "effective consent" and "owner.")

Following such instructions and definitions, the court submitted only the following special issue:

Do you find from the evidence, beyond a reasonable doubt, that [appellant] did enter a building, which was not then open to the public, without the effective consent of Roger Harris, the owner, with intent to commit the crime of arson, and by doing so did engage in delinquent conduct.?

The judgment declaring appellant to be delinquent recites that the jury returned "the following answers to the special issues" which were submitted:

That [appellant] . . . did . . . start a fire, with the intent to damage and destroy a building . . ., without

the effective consent of Roger Harris, the owner.

Do you find from the evidence, beyond a reasonable doubt, that [appellant] has engaged in Delinquent Conduct as that term has been hereinabove defined?

Answer "yes" or "no"

We, the Jury, answer: Yes, [appellant] did engage in Delinquent Conduct.

Without further reference to the verdict, the judgment then pronounces that appellant had engaged in delinquent conduct.

At the disposition hearing subsequently held, the prosecutor, in opposing appellant's plea for probation, stated to the court that appellant had been found guilty of "arson" and that the jury had found that appellant had violated § 28.02 of the Penal Code (the statute denouncing arson). The court, in orally announcing that the request for probation was denied, referred to the "seriousness" of the offense committed by appellant. The commitment order recites that appellant is ordered committed because of: "The seriousness of the offense and the child's propensity for continued anti-social behavior."

The brief filed in this Court by the State, in the portion captioned "Statement of the Nature of the Case," recites: "The verdict of the jury was that appellant had committed the offense of arson and had engaged in delinquent conduct." On page 11 of its brief the State asserts that the evidence was sufficient to prove that appellant had committed "the offense of arson." This statement is found immediately following the portion of the brief quoting the provisions of the arson statute. On page 21 of the State's brief, among the reasons advanced in support of the trial court's denial of probation, is the statement, "Here the court considered the act of arson and the damages of $200,000 to $300,000 to be an offense of serious nature."

Several observations are considered pertinent.

1. Although the judgment recites that the jury found that appellant had committed the crime of arson and the court's dispo-

sition order is, as confirmed by the State's brief, based at least in part on the "serious nature" of the crime of arson, there is no jury finding that appellant committed arson. The failure of the verdict to contain a finding of arson is, of course, explainable by the fact that no issue concerning arson was submitted to the jury, although the offense of arson was the only offense referred to and defined in the court's instructions.

2. Although the charge did not mention burglary and, necessarily, did not define that offense, the only issue submitted to the jury was one inquiring whether appellant had committed burglary; an offense with which, according to the charge, appellant was not charged.

3. The State offered no objection to the court's failure to submit any issue necessarily referable to the charge of arson, nor did it submit any requested issue necessarily referable to the offense of arson. Under well established rules, this resulted in a waiver by the State of the charge of arson as a ground for concluding that appellant had engaged in delinquent conduct. *Texas Employers Ins. Ass'n v. Motley*, 491 S.W.2d 395, 398 (Tex.1973). The judgment declaring that appellant had engaged in delinquent conduct and the order of commitment are based on the completely erroneous assumption that appellant was guilty of a charge which the state had in fact waived, and concerning which the jury had made no finding.

4. The judgment in this case recites, "Paragraph number two (2) was waived and abandoned by the State." This "waived and abandoned" paragraph is the paragraph charging the offense of burglary. This waiver by the State of the charge of burglary, perhaps, explains why the court instructed the jury only that appellant was charged with arson, as well as the fact the charge defined only the crime of arson. The recital in the judgment concerning the waiver and abandonment, of course, makes it impossible to explain why the only issue submitted related to the abandoned charge.

5. It would, perhaps, be possible for this Court to modify the judgment by striking

out the erroneous references to the non-existent finding of arson and substitute recitals that the jury had found that appellant had committed burglary. This method of salvaging the judgment, however, is not available in this case since that operation would require that we amend the judgment to include a recital that appellant was found guilty of a charge which, according to the judgment, the State had "abandoned and waived." There can be no doubt that the recital in the judgment concerning waiver refers to the burglary charge. In addition, the charge to the jury stated only that appellant was charged with arson. As pointed out above, the prosecutor, when reading the petition to the jury, identified "paragraph one" as the paragraph embodying the charge of arson. The paragraph containing the allegations concerning burglary immediately follows the paragraph identified as "paragraph one," and the prosecutor prefaced his remarks relating to the burglary paragraph with the word "Two." After the petition was read to the jury, appellant answered "Not true." The trial judge then said, "Not true to paragraph one and paragraph two." Appellant said, "Yes." The court then said, "Not true to both."

None of the unusual features of this proceeding outlined above were called to the attention of the trial court by any objection, request or motion by appellant. Further, none of these irregularities has been made a cause for complaint in the brief filed by appellant in this Court. The result is that we cannot consider such irregularities unless they may be characterized as "fundamental error" which can be considered by this Court without being "assigned."

We need not discuss the history or development of the doctrine of fundamental error as applied by the Texas courts prior to September 1, 1941, the effective date of the present rules of civil procedure.[1]

The present rules contain no mention of fundamental or unassigned error. Rule 374

provided that where a motion for new trial was required, grounds of error not distinctly specified in such motion would be considered waived. Tex.R.Civ.P. 374 (Vernon 1941). Where no motion for new trial was required, the errors relied on for reversal were to be included "in the statement of points" in the brief. *Id.* Although the language of that rule might have been construed as abolishing the doctrine of fundamental error in civil cases, the Texas Supreme Court held that the Court of Civil Appeals had correctly reversed a trial court judgment in an election case on a ground not assigned as error in appellant's brief. *See Ramsey v. Dunlop,* 146 Tex. 196, 205 S.W.2d 979, 983 (1947). *See generally Newman v. King,* 433 S.W.2d 420, 421–22 (Tex. 1968). The concurring opinion in *Ramsey* stated that unassigned error may be considered "only when it involves a matter of public interest and when the record affirmatively and conclusively shows that the appellee was not entitled to recover, where the record affirmatively shows that the court rendering the judgment was without jurisdiction over the subject matter." 205 S.W.2d at 985. Apparently, the "interest of the public generally" is determined by reference to the "constitution and statutes." *Id.* at 983.

Although the Supreme Court has made no effort to define fundamental error other than the statements such as those found in *Ramsey* and *King* concerning public interest and lack of jurisdiction over the subject matter, it has pronounced that the field of fundamental error is "very narrow." *State v. Sunland Supply Co.,* 404 S.W.2d 316, 319 (Tex.1966). There has been no indication that this construction of the doctrine has been affected by the repeal of Rule 374, effective January 1, 1978.

■ A review of the cases furnishes no significant guidance in the effort to formulate a less general and more useful definition of fundamental error. However, there is ground for saying that when the rights of

---

1. The pre-1941 cases and applicable statutes are discussed in Note, 29 Tex.L.Rev. 369 (1951). The statutes dealing with consideration of

unassigned error are considered repealed by the adoption of the current rules of civil procedure.

minors are involved, the interest of the State in their welfare and protection weighs on the side of finding a sufficient public interest.

In *State v. Santana*, 444 S.W.2d 614, 615 (Tex.1969), *judgmt. vacated and cause remanded*, 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594, *on remand*, 457 S.W.2d 275 (Tex.1970), the charge of the trial court permitted the jury to find that the child had engaged in delinquent conduct if it found, "by a preponderance of the evidence," that the child had committed rape. Although no objection was made to the charge, the Texas Supreme Court considered the claim that the correct quantum of proof in a delinquency proceeding was the standard of proof beyond a reasonable doubt, saying:

> In the ordinary civil case, the alleged error in the charge to the jury would be considered as waived [because of the absence of objection]. But in view of the constitutional importance of this case to the public generally, and in view of the fact that juvenile proceedings are not designed to be conducted as ordinary adversary proceedings, the point raises a question of fundamental error, and it will be so treated.

444 S.W.2d at 615.

The vacation of the Texas Supreme Court's judgment by the United States Supreme Court and the remand of the case to the Texas Court was due to the fact that the Texas Supreme Court had concluded that employment of the "preponderance of the evidence" standard was proper. The remand was for the purpose of allowing the Texas Court to reconsider the question in light of the decision by the United States Supreme Court in *Matter of Winship*, 397 U.S. 558, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which held that in a delinquency proceeding proof beyond a reasonable doubt was mandated by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The action of the United States Supreme Court in no way affected the conclusion of the Texas Supreme Court that a question of fundamental error was involved.

In *Rey v. Rey*, 487 S.W.2d 245 (Tex.Civ. App.—El Paso 1972, no writ), a divorce proceeding involving custody and liability for the support of a minor child, the trial court submitted only an issue inquiring whether during a specified period the parties were husband and wife, without inquiring whether the mother of the child and the defendant had, subsequent to such period, entered into a relationship which made the mother the putative wife of the defendant. The effect of the jury's negative answer to the only issue submitted, the Court pointed out, placed upon the child the "stigma of illegitimacy," while a favorable answer to an issue inquiring as to the mother's standing as a putative wife would have made the child legitimate. 487 S.W.2d at 248. Since no objection was made to the charge, the defect in the charge would normally be waived under Tex.R.Civ.P. 279.

The El Paso Court of Civil Appeals reversed the judgment of the trial court, saying that the lower court "committed fundamental error in adjudicating the rights of the Petitioner and particularly the rights of the minor child based on an issue unduly limiting the relationship of the parties to matters antecedent to the alleged ceremonial marriage [between the natural father and a woman other than the child's mother] and not encompassing the relation of the parties subsequent thereto." 487 S.W.2d at 248.

■ It is true that in both *Santana* and *Rey* the errors, although not properly called to the attention of the trial court, were made the bases for points of error in the appellants' briefs. However, where fundamental error is present it should be raised and corrected by the appellate court on its own motion. *See Central Sur. & Ins. Corp. v. Anderson*, 445 S.W.2d 514, 515 (Tex. 1969); *Holland v. Taylor*, 153 Tex. 433, 270 S.W.2d 219, 220 (1954).

The Texas Court of Criminal Appeals has applied the doctrine of fundamental error in criminal cases. The criminal cases define fundamental error as an error calculated to injure the rights of the appellant to the

extent that he has not had a fair and impartial trial. *Ross v. State*, 487 S.W.2d 744, 745 (Tex.Cr.App.1972).

In a criminal case, where the trial court's charge contains only an abstract instruction concerning the law and fails to apply such law to the facts of the case, the error is fundamental. In *Harris v. State*, 522 S.W.2d 199, 202 (Tex.Cr.App.1975), the Court said:

> The error in the charges goes to the very basis of the cases. The charge in each case fails to apply the law of rape to the evidence, and the jury was not instructed under what circumstances they should convict, or under what circumstances they should acquit. In the situation presented, the error was calculated to injure the rights of appellants, and they did not receive the fair and impartial trial to which they were entitled under the federal and state Constitutions.

The charge in the instant case explained only the law of arson and, at least to some extent, instructed the jury "under what circumstances they should convict" and "under what circumstances they should acquit." But those instructions were completely irrelevant to the only issue submitted. The only issue submitted concerned burglary, and as to that offense the charge did not contain even an abstract instruction concerning the law. Because of the failure to instruct concerning the law of burglary, the charge, understandably, does not inform the jury under what circumstances they should find that appellant committed burglary and under what circumstances they should find that he did not.

■ In a criminal case, a charge which permits the jury to find the accused guilty on the basis of facts not alleged in the indictment is denounced as fundamental error. This is true even where the jury finds defendant guilty of the same offense as that charged in the indictment, but the charge authorizes the jury to return a verdict of guilty on theories not embodied in the indictment. *See Robinson v. State*, 553 S.W.2d 371, 375 (Tex.Cr.App.1977) (where the Court said that the effect of the error was to deprive the accused of a fair and impartial trial).

In the case at bar, the jury was allowed to find that appellant had engaged in delinquent conduct on the theory that he had committed the offense of burglary. Since the State had "waived and abandoned" the theory of delinquency resulting from the commission of burglary, there were no pleadings which supported the theory submitted to the jury. Clearly, the charge authorized the jury to find that appellant had engaged in delinquent conduct on the basis of conduct not alleged in the State's pleadings after the paragraph concerning burglary had been abandoned.

Further, in this case, the State had not only waived and abandoned the paragraph alleging that appellant had engaged in delinquent conduct by committing burglary, but had also waived the only other basis contained in the pleading for a finding of delinquency, the charge that appellant had committed arson. As a result, there were no pleadings which alleged a basis for a finding of delinquency. The applicable statute requires that the State allege "with reasonable particularity the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts" of appellant. Tex.Fam. Code Ann. § 53.04(d)(1) (Vernon 1975). The State was left with a pleading which alleged no acts, and completely failed to allege the penal law or standard of conduct "allegedly violated" by the unspecified acts.

■ Whether standards applicable to the criminal prosecution of an adult are to be applied in a juvenile delinquency proceeding is a question which can no longer be mechanically solved merely by insisting that juvenile proceedings are civil in nature. As the Supreme Court pointed out in *Santana*, delinquency proceedings are *sui generis*, and the goal of the courts is to insure that the delinquency hearing is "conducted with dignity and fairness and with the essentials of due process being observed." 444 S.W.2d at 617.

The recognition that delinquency proceedings are *sui generis* prevents their classification as criminal proceedings for all purposes, even though it is recognized that in such proceedings the loss of liberty is no less real and the stigma which attaches to an adjudication of delinquency is no less harsh than in a criminal proceeding. For example, in *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the right to a jury trial, although it rests on an express constitutional grant insofar as criminal cases are concerned, was withheld from juveniles even at the adjudicatory stage of delinquency proceedings. In *Matter of S.J.C.*, 533 S.W.2d 746, 748 (Tex.), *cert. den. sub nom. Chavez v. Texas*, 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976), the rule, applicable in criminal cases, that the uncorroborated testimony of an accomplice is insufficient to support a conviction, was held by the Texas Supreme Court to be inapplicable in juvenile proceedings. The Supreme Court reasoned that the absence of corroboration of the testimony of an accomplice did not prevent the juvenile hearing "from measuring up to the essentials of due process and fair treatment," even though "a like conviction of an adult would not be upheld." 533 S.W.2d at 748.

In *S.J.C.*, the Texas Supreme Court relied on *United States v. Augenblick*, 393 U.S. 348, 352, 89 S.Ct. 528, 532, 21 L.Ed.2d 537 (1969), where Mr. Justice Douglas, holding that a conviction by a court martial resting on the uncorroborated testimony of an accomplice was not constitutionally objectionable, said:

> Rules of evidence are designed in the interest of fair trials. But unfairness in result is no sure measure of unconstitutionality. When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions.

It may be true, as Mr. Justice Douglas pointed out in *Augenblick*, that "statutory rules of evidence . . . do not customarily involve constitutional questions." 393 U.S. at 392, 89 S.Ct. at 532. But there can be no doubt that if a rule of evidence is applied in an invidiously discriminatory manner and the decision concerning applicability rests on irrelevant and discriminatory distinctions, a substantial equal protection question is presented. *Augenblick* did not discuss the equal protection problem, and that problem, at best, is only peripherally noted in *S.J.C.* It is not easy to understand why testimony which the public policy of this state, as embodied in our statutes, considers to lack that degree of trustworthiness necessary to justify depriving an adult of his liberty, acquires such probative force that it establishes, beyond a reasonable doubt, that a child should be incarcerated. The relationship between the probative force of testimony and the age of the accused, if it does exist, is extremely tenuous.

In *Kent v. United States*, 383 U.S. 541, 551, 86 S.Ct. 1045, 1052, 16 L.Ed.2d 84 (1966), it was recognized that serious constitutional questions arise when juveniles are afforded "less protection than is accorded to adults." As pointed out by Mr. Justice White in his concurring opinion in *McKeiver*, the states "are not bound to provide jury trials [to juveniles] on demand so long as some other aspect of the process adequately protects the interests that Sixth Amendment jury trials are intended to serve." 403 U.S. at 554, 91 S.Ct. at 1990. The majority opinion in *McKeiver* reasoned that granting the right to a jury trial in juvenile proceedings "would not strengthen . . . the fact-finding function" but, instead, would jeopardize one of the most beneficial features of the juvenile proceeding, i. e., its non-adversary nature. 403 U.S. at 547, 91 S.Ct. at 1987.

In the instant case the child has been denied rights which could not have been withheld from an adult in criminal proceedings without violating the constitutional guarantee of a fair and impartial trial. We find no indication that this "denial of rights . . . [is] offset, mitigated or explained by action of the [State], as *parens patriae*." 383 U.S. at 551, 86 S.Ct. at 1052. Can it be said that requiring a court to properly instruct a jury concerning the applicable law,

to apply such law to the facts, and to instruct the jury "under what circumstances they should" find that appellant committed burglary and "under what circumstances they should" find that he had not, "would not strengthen . . . the fact finding function"? Can it be argued that allowing a jury to find a child delinquent on the basis of an accusation which the State had abandoned in some way strengthens any phase of the judicial function? The proposition that requiring a jury finding of delinquency to be based on a charge which has not been abandoned, or requiring a judgment adjudicating a child to be delinquent to be based on an accusation which has not been abandoned or, at the very least, to be based on a jury finding in a case in which the child has not waived his right to a jury, would not strengthen the adjudicatory function cannot be defended.

It is clearly inappropriate to speak of "waiver" in this case. Even if we overlook the fact that a holding that this child "waived" rights which an adult in a criminal case cannot waive would raise substantial constitutional questions, the notion of waiver has its roots in our adversary theory of litigation. It is patent that the theory is incompatible with the tenet that one of the most beneficial features of a juvenile proceeding is its "non-adversary nature." The currently accepted belief is that the State, in its role as *parens patriae*, is interested only in the care, needs and protection of the child and his rehabilitation and restoration to useful citizenship. It should not lie in the mouth of such a benevolent substitute parent, after expressing its deep concern for the welfare of the child, to follow its expression of benevolent purpose with the admonition: "But don't forget, if the established procedures, because of the State's overriding concern in your welfare and its eagerness to insure that you receive prompt and efficacious treatment, overlooks some of your rights, you'd better object or you've had it."

An even greater problem is presented by the fact that, after the State had waived the only two charges of criminal conduct contained in its petition, there was a lack of compliance with the provisions of § 53.-04(d)(1) prescribing the requisites of the State's petition. *See* Tex.Fam.Code Ann. § 53.04(d)(1) (Vernon 1975). A finding of waiver of this defect in the State's pleadings cannot be defended in the absence of a waiver complying with the requirements of § 51.09 of the Family Code. This section provides that, absent a contrary intent clearly appearing elsewhere in Title 3 of the Family Code, no right granted a child by that title or the Constitution or laws of the United States or Texas may be waived in Title 3 proceedings unless:

(1) the waiver is made by the child and the attorney for the child;

(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;

(3) the waiver is voluntary; and

(4) the waiver is made in writing or in court proceedings that are recorded.

Tex.Fam.Code Ann. § 51.09 (Vernon Supp. 1980).

■ Title 3 of the Family Code includes § 53.04(d)(1), which requires that the State allege with reasonable particularity the time, place and manner of the alleged acts and the penal law or standard of conduct allegedly violated by such acts. *See* Tex. Fam.Code Ann. § 53.04(d)(1) (Vernon 1975). This provision clearly gives the child a right to have fair notice of the charges which he will be required to meet. A pleading whose every allegation of time, place and manner of alleged acts and of the penal laws or standards of conduct which such acts violated has been eliminated by waiver falls short of according the right of fair notice to the child. Certainly, a pleading charging arson cannot constitute fair notice of the charge of arson after that charge has been waived. The same is true of a charge of burglary which has been waived and abandoned.

The right to fair notice of the nature of the charges against the child is, therefore, a right given the child by Title 3 of the Family Code. There is nothing in the record which even suggests that this right was waived in the manner required by § 51.09.

We conclude that the errors apparent from the face of the record deprived appellant of that right to a fair and impartial trial guaranteed by the federal and state constitutions. It cannot be said that glaring errors of such constitutional dimension affect only the rights of this appellant and not the public interest. No matter how much we lend ear to the statements that the State is interested only in the treatment and rehabilitation of the child, those apologies are drowned out by the sound waves generated by the many irregularities in this case. The goals of the juvenile court may, indeed, be beneficent, but it is still a court of law, and its proceedings must be conducted with dignity and fairness, and with regard to the requirements of due process. As Justice Pope said in his dissent in *Santana*, "[l]iberty is our real concern," and it is imperative that appellant be accorded "fairness first; therapy second." 444 S.W.2d at 628. It is certainly in the public interest that the courts of this state insure that in any proceeding in which a child is exposed to the risk of loss of liberty at least the minimal standards regulating the judicial fact finding process be observed. The errors are fundamental and require reversal.

The judgment of the trial court is reversed and the cause is remanded for further proceedings to determine whether appellant has been guilty of delinquent conduct.