

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-22-00194-CV

Jerry A. **GUZZETTA**,
Appellant

v.

**BRIMHALL LQ, LLC** d/b/a La Quinta Hotel,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-14775
Honorable John D. Gabriel Jr., Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: July 12, 2023

AFFIRMED

In this appeal, appellant Jerry A. Guzzetta complains of the award of contingency attorney's fees to his former attorney, Patrick Stolmeier. On appeal, Guzzetta raises three issues: (1) the trial court erred in awarding fees because Stolmeier failed to establish good cause for his withdrawal and provide sufficient evidence to support the award of fees; (2) the trial court erred in granting and refusing to set aside appellee Brimhall LQ, LLC's ("Brimhall") motion for summary judgment; and (3) the trial court erred in refusing to grant a new trial and sever/abate Stolmeier's fee claim to allow Guzzetta to pursue a malpractice case against Stolmeier. We affirm.

**BACKGROUND**

*The Origin of the Dispute*

This dispute owes its origins to a personal injury claim arising over a decade ago. Although Guzzetta's personal injury action is not at issue in this appeal, the factual origin provides important context. In July 2011, Guzzetta (a California resident) was hired by American K-9 Detection Services ("K-9"). On or around September 18, 2011, Guzzetta attended K-9's training program for canine handlers in Pipe Creek, Texas. While participating in K-9's training program, Guzzetta stayed at a La Quinta Inn owned by Brimhall.[1] According to Guzzetta, he slipped on muddy steps at the La Quinta Inn and fell onto a landing, resulting in injuries to his neck, right upper extremity, and left knee. After completing training, Guzzetta was sent to either Iraq or Afghanistan in December 2011. He continued to work for K-9 until his employment contract ended at the end of April 2012.

Upon returning to the United States, Guzzetta notified K-9 that he was injured during his employment. He then filed at least four claims relating to the injury: (1) a worker's compensation claim in California; (2) an unemployment claim in Florida; (3) a third-party lawsuit against Brimhall in Bexar County, Texas; and (4) a claim for benefits under the Defense Base Act ("DBA"). The third of these is the proceeding below, and the fourth is essential to this appeal.

Guzzetta's alleged injury potentially entitled him to $1,260,000 in federal worker's compensation benefits under the DBA. *See* 42 U.S.C. § 1651, *et seq.* Importantly, however, the DBA bars all recovery if a person entitled to compensation "enters into a settlement with a third person" for an amount less than his compensation entitlement for an alleged injury without

---

[1] Brimhall formally declined to participate in oral argument and did not file a brief.

obtaining the employer or its insurer's prior written consent to the third-party settlement. 33 U.S.C. § 933(g).[2]

Florida attorney Howard Grossman represented Guzzetta in pursuit of his DBA claim. Beginning around January 16, 2013, Stolmeier represented Guzzetta in the underlying personal injury action against Brimhall. Guzzetta engaged Stolmeier on a 40% contingency agreement.

***Relevant Procedural History***

On September 7, 2012, Guzzetta filed his original petition against Brimhall. After years of litigation and extensive discovery, Guzzetta (represented by Stolmeier) and Brimhall attended a June 27, 2016 mediation, which resulted in the consummation of a Mediation Settlement Agreement ("MSA"). In relevant parts, the MSA (1) required Brimhall to pay Guzzetta $250,000 for dismissal with prejudice of all claims and associated releases and indemnities and (2) set forth timing related to tendering (but *not* executing) drafts of the formal release and for payment.

Rather than end litigation, the MSA initiated years of protracted, acrimonious litigation centered around one fact: Because Guzzetta neither sought nor received K-9 or its insurer's prior written consent to the MSA, the MSA potentially barred Guzzetta from a significantly higher recovery on his DBA claim. According to Guzzetta, Stolmeier failed to advise him that receipt of settlement funds would result in forfeiture of his DBA claim and failed to communicate with Grossman prior to execution of the MSA. According to Stolmeier, Grossman approved Guzzetta's execution of the MSA. Guzzetta asserts that after he learned that receipt of funds from Brimhall would forfeit his DBA claim, he refused to sign the release contemplated by the MSA unless and until K-9 or its insurer provided written consent.

---

[2] "The written-approval requirement . . . 'protects the employer against his employee's accepting too little for his cause of action against a third party.'" *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992).

Guzzetta subsequently sought to either unwind the MSA or delay its implementation as long as possible so that the DBA claim could be favorably resolved. Meanwhile, Stolmeier sought to recover his contingency fee attributable to the third-party claim and, to that end, intervened in the underlying proceeding. The parties subsequently filed various pleadings and motions seeking essentially the same relief: (1) for Guzzetta, time to handle the DBA claim; (2) for Stolmeier, his contingency fee derived from the third-party settlement; and (3) for Brimhall, the release contemplated by the MSA.

After intervening, Stolmeier sought to depose Guzzetta and obtained a court order requiring Guzzetta to appear at a certain date and time. Asserting an unspecified medical emergency, Guzzetta failed to appear. Having failed to appear for a court-ordered deposition, on April 7, 2017, the trial court entered a twenty-two-page sanctions order.[3] Guzzetta refers to the sanctions order as a "death penalty sanctions order" that effectively ended his DBA claim.

On May 30, 2017, Brimhall filed a motion for summary judgment. On traditional grounds, Brimhall asserted Guzzetta breached the MSA. On no-evidence grounds, Brimhall asserted there is no evidence of a valid excuse that would invalidate the MSA. Neither summary judgment ground relied on the sanctions order. Given Guzzetta and Stolmeier's potentially competing claims to the settlement payment, Brimhall also sought to interplead[4] the settlement payment into the court's registry.

On August 11, 2017, the trial court granted Brimhall's motion for summary judgment. The trial court determined the MSA was a binding, enforceable agreement; deemed the release signed by Guzzetta; and sustained Brimhall's objections to Guzzetta's defenses. The trial court also

---

[3] Much later, the sanctions order was set aside in part in an order that, among other things, ordered Guzzetta to appear for his deposition and pay certain costs.

[4] Interpleader protects a person from multiple liability by allowing a disinterested party to tender payment, which allows interested parties to adjudicate amongst themselves. *See* TEX. R. CIV. P. 43.

granted Brimhall's motion for leave to deposit the settlement proceeds into the court registry and discharged Brimhall from liability to the extent of the tendered sum.

On September 11, 2017, Stolmeier filed a motion to "join" the order on Brimhall's motion for summary judgment. On November 6, 2017, the trial court entered an order granting Intervenor's request for the same relief obtained by Brimhall.

After approximately two-and-a-half years of relative tranquility, the parties resumed active litigation in May 2020. The parties filed numerous motions. Most pertinently, Stolmeier filed for immediate payment of his contingency fee from the registry deposit, and Guzzetta sought to block payment from the registry on the basis that it would extinguish his DBA claim. After the parties set a slate of competing motions for a September 28, 2020 hearing, they entered a "Revised Confidential Settlement Proposal for Rule 11 Agreement." To summarize, the Rule 11 agreement provided:

1. The parties agreed not to oppose Guzzetta's motion to set aside the trial court's August 11, 2017 order granting Brimhall's motion for summary judgment; *however*, the parties agreed to contemporaneously sign an agreed order vacating the order to set aside the summary judgment, provided that the agreed order will be held by Stolmeier for at least thirty days prior to presenting to the trial court for signature. ***In other words, Guzzetta would have thirty days to obtain a waiver under the DBA; if he did not, Stolmeier could file an agreed order reinstating Brimhall's summary judgment.***

2. The parties agreed not to oppose Brimhall's motion to amend interpleader order.

3. The parties agreed that if Stolmeier waited until resolution of the DBA issue to seek disbursement of the interpled funds, Guzzetta would stipulate to the $114,145.93 claim for fees; waive any argument or claim under federal law for equitable adjustment; and stipulate that Guzzetta's recovery from the DBA proceeding and his share of the interpled funds constitutes a full recovery for his claims. The parties further agreed to execute full releases prior to distribution.

4. Thirty days after entry of the order amending the interpleader, Stolmeier may seek distribution of interpled funds; however, if he does so, Guzzetta and Brimhall do not join the request and can contest it prior to final resolution of the DBA claim.

The Rule 11 agreement was executed by attorneys for Guzzetta and Brimhall, and by Stolmeier. Pursuant to the Rule 11 agreement, on September 28, 2020, the trial court entered orders (1) setting aside Brimhall's summary judgment order and (2) amending the interpleader order.

On May 3, 2021, relying on the Rule 11 agreement, Stolmeier sought entry of the executed agreed order. On June 28, 2021, the trial court entered the "Agreed Order on Intervenor's Motion to Vacate Order Setting Aside Summary Judgment." Notably, the order was signed "Agreed" by all parties, as required by the Rule 11 agreement. This order vacated the prior order that set aside Brimhall's summary judgment, thereby reinstating Brimhall's summary judgment.

Stolmeier subsequently filed various papers seeking release of registry funds. After several hearings, on January 7, 2022, the trial court entered a final judgment entitled "Order Granting Intervenor's Motion to Withdraw Funds from the Court Registry." The order: (1) found Stolmeier's request for $100,000 in contingency attorney's fees to be reasonable; (2) found $14,145.93 in costs to be reasonable; (3) ordered the Bexar County clerk to issue a check to Stolmeier for $114,145.93, "plus interest at the legal rate pursuant to the Texas Finance Code"; and (4) denied all objections to Stolmeier immediately withdrawing funds. On January 24, 2022, the trial court entered a nunc pro tunc order that calculated interest in the amount of $25,481.98 and substituted the calculated interest for the general award of interest.

On February 7, 2022, Guzzetta filed a motion for new trial and an original counterclaim for legal malpractice against Stolmeier. Guzzetta argues the final judgment forfeits his right to recover on his DBA claim, giving rise to a legal injury and newly accrued malpractice claim. He requested the trial court set aside its judgment and allow his malpractice counterclaims to proceed

to trial. On March 17, 2022, Guzzetta amended his motion for new trial and moved to sever his malpractice claims into a new cause. The trial court did not rule on either motion.[5] Guzzetta timely appealed.

## FUNDAMENTAL ERROR

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A). Guzzetta accurately concedes his first and third issues were not preserved in the trial court. Nevertheless, Guzzetta asserts he is entitled to raise the issues on appeal under the fundamental error doctrine.

"Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties." *Mack Trucks v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006); *In the Interest of B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003). But the present jurisprudential value of the fundamental error doctrine is dubious; the "discredited" doctrine survives today only in two, "rare" instances. *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982).

Under the first instance—not at issue here—we review for fundamental error where "the record affirmatively and conclusively shows that the court rendering the judgment" lacked subject matter jurisdiction. *Tamez*, 206 S.W.3d at 577. This type of fundamental error is relatively common and wholly uncontroversial.

Under the second instance—at issue here—we review for fundamental error where the "error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State." *Id.* "The meaning of the 'public interest' that is adversely affected must be extremely circumscribed, or the exception would swallow the rule." *In*

---

[5] The motion for new trial was overruled by operation of law. *See* TEX. R. CIV. P. 329b.

*re J.F.C.*, 96 S.W.3d 256, 292 (Tex. 2002) (Hankinson, J., dissenting); *see also Newman v. King*, 433 S.W.2d 420, 422 (Tex. 1968) ("Error in failing to appoint a guardian ad litem for a minor plaintiff who is represented by a regular guardian or next friend affects the rights of only the particular minor and the particular litigants; it does not adversely affect the interest of the public generally."). Texas courts have most often found "public interest" fundamental error in quasi-criminal proceedings, such as juvenile proceedings. *See, e.g.*, *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999) (emphasizing "a juvenile proceeding is not purely a civil matter. It is quasi-criminal."). On this record, we decline to undertake "public interest" fundamental error review for four reasons.

First, Guzzetta asserts the public policy of the State of Texas, as expressed in the Texas Disciplinary Rules of Professional Conduct (the "Disciplinary Rules"), demands we review his unpreserved issues. However, "[t]he Disciplinary Rules are not binding as to substantive law regarding attorneys, although they inform that law." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 503 (Tex. 2015). And being neither statutory nor constitutional, the Disciplinary Rules do not appear to constitute a sound basis to invoke "public interest" fundamental error review as it is presently articulated. *See Tamez*, 206 S.W.3d at 577 (public interest must be "declared by the statutes or Constitution" of Texas).

Second, although Guzzetta asserts the "unique facts of this case demonstrate how closely judicial integrity is linked to lawyers' compliance with" the Disciplinary Rules, he fails to identify what unique facts do so. He also fails to identify, and we cannot ascertain, a limiting principle distinguishing this case from every other case involving alleged attorney misconduct. Taken to its natural conclusion, Guzzetta's argument implies error preservation is categorically inapplicable in cases involving alleged attorney misconduct. Yet, employing "public interest" fundamental error review in this way would swallow the rule. *See In re J.F.C.*, 96 S.W.3d at 292 (Hankinson, J., dissenting).

Third, the issues at stake in this case appear to "affect[] the rights of only . . . the particular litigants" and "do[] not adversely affect the interest of the public generally." *Newman*, 433 S.W.2d at 422. The remedy Guzzetta seeks illustrates this: If Guzzetta prevails, moneys paid to Stolmeier would be returned to the court registry, allowing Guzzetta to potentially recover on his DBA claim. In essence, this is a case about who gets how much money; the public faces no potential adverse effects no matter the outcome.

Fourth, assuming without deciding the face of the record reveals Stolmeier egregiously violated the Disciplinary Rules,[6] we are not convinced the fundamental error doctrine, as it is presently articulated, is applicable outside the extremely narrow contexts in which it has been approved by our supreme court. *See People for the Ethical Treatment of Animals, Inc. v. Bandera Wranglers*, No. 04-21-00466-CV, 2023 WL 1810496, at *3 (Tex. App.—San Antonio Feb. 8, 2023, no pet.) ("[M]ajor changes in established law should be made by our Supreme Court.") (quoting *Calhoun v. Pasadena Indep. Sch. Dist.*, 496 S.W.2d 131, 132 (Tex. Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.)).

Guzzetta did not preserve his first and third appellate issues, and we decline to review them for fundamental error. We overrule Guzzetta's first and third issues.

### INVITED ERROR

"A party cannot ask something of the trial court and then complain the trial court erred in granting the relief sought." *In re of R.H.B.*, 660 S.W.3d 136, 154 (Tex. App.—San Antonio 2022, no pet.). "The invited error doctrine applies to situations where a party requests the court to make a specific ruling, then complains of that ruling on appeal." *Galvan v. Garcia*, 502 S.W.3d 382, 385 (Tex. App.—San Antonio 2016, no pet.) (quoting *In re Dep't of Family & Protective Servs.*, 273

---

[6] The record reflects Guzzetta's grievance against Stolmeier was dismissed.

S.W.3d 637, 646 (Tex. 2009)). A party's consent to the trial court's entry of judgment waives any error, except for fundamental error, contained in the judgment, and that party has nothing to properly present for appellate review. *DHI Holdings, LP v. Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Capital I Inc. Tr. 2006-HE3, Mortgage Pass-Through Certificates, Series 2006-HE3*, 650 S.W.3d 522, 527–28 (Tex. App.—Houston [14th Dist.] 2021, pet. filed).

Guzzetta asserts the trial court erroneously granted Brimhall's motion for summary judgment. However, the order granting Brimhall's motion for summary judgment was reinstated by the trial court *at Guzzetta's request* as part of the parties' Rule 11 agreement. On June 28, 2021, the trial court entered the "Agreed Order on Intervenor's Motion to Vacate Order Setting Aside Summary Judgment." As required by the Rule 11 agreement, Guzzetta agreed to the form and substance of the order reinstating Brimhall's motion for summary judgment. By agreeing to the substance of the order reinstating Brimhall's motion for summary judgment, Guzzetta invited error and, therefore, this issue is not presented for our review. *See id.* ("Concluding that DHI did not comply with Rule 33.1(a) and invited the trial court to sign the agreed judgment against DHI's interest without objecting to the content or the result, DHI has not preserved a complaint for appellate review."). We overrule Guzzetta's second issue.

## CONCLUSION

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice