In the Interest of R.B., J.B., S.B., T.B., A.B., and J.B., Children.

No. 2–05–357–CV.

Court of Appeals of Texas, Fort Worth.

May 10, 2007.

Danna Kirk Mayhall, Athens, for Appellant.

Randy Bowers, Fort Worth, for Ad-Litem.

Duke Hooten, Austin and Charles M. Mallin, Chief, Appellate Division District Attys. Office, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

### I. Introduction

Appellants Ronald and Willie Jean B. appeal the trial court's order terminating their parental rights to their children,

R.B., J.B., S.B., T.B., A.B., and J.B. We affirm.

## II. Factual and Procedural Background

In November 2003, Ronald and Willie Jean were living in a motel with seven of their children, R.B., J.B., S.B., T.B., A.B., J.B., and B.B.[1] when CPS received a report that while appellants were in the motel hot tub, their four-year-old daughter jumped into the pool and appeared to be drowning. According to the report, appellants did nothing to save their daughter from drowning, and another hotel guest had to jump into the pool to rescue her. When the rescuer confronted appellants about their failure to help their daughter, Ronald yelled at her.

Within two days of the report about the pool incident, CPS received another report that appellants' two-year-old child was walking down the stairs from the third floor of the motel unsupervised and carrying a knife. The same child had also been observed walking around the motel unsupervised as late as 11:00 p.m. on two other occasions.

Based on these reports, CPS began its investigation. During the investigation, several of the children made outcry statements about sexual abuse and neglect. The Department of Protective and Regulatory Services (the State) eventually removed the children from appellants' care.

On April 19, 2005, the State filed a petition to terminate the parent-child relationship between appellants and the children. One month later, the trial court ruled that outcry statements made to a counselor, the children's foster parents, and a CPS caseworker would be admissible during trial.

At the final hearing on the State's petition, appellants appeared through their trial attorney, Jim Lane, who presented to the court affidavits of relinquishment for all six children executed by both appellants. Lane also announced that appellants had entered into a Rule 11 agreement with the State, in which the State agreed not to initiate proceedings to terminate appellants' rights to their other children based on the allegations and proof in this case.[2] The following day, on September 23, 2005, the trial court entered an order terminating appellants' parental rights to the children on the basis of the affidavits of relinquishment.

Eleven days after the order terminating their parental rights was rendered, appellants filed affidavits revoking their affidavits of relinquishment pursuant to section 161.1035 of the Texas Family Code.[3]

On October 7, 2005, appellants filed a motion for new trial asserting, among other things, that the evidence was legally and factually insufficient to show that they had executed the affidavits of relinquishment freely and voluntarily. After a hearing, the trial court denied appellants' motion for new trial.[4]

---

1. B.B. was nonsuited from this case because she turned eighteen during the pendency of the suit.

2. During the pendency of this suit, Willie Jean gave birth to another child, also named J.B., who is not the subject of the suit, and became pregnant with another child, who is also not a subject of this suit. We will refer to these two children as the "unaffected children."

3. *See* TEX. FAM.CODE ANN. § 161.1035 (Vernon 2002) (providing that an affidavit of relin-

quishment of parental rights that does not state that it is irrevocable may be revoked before the eleventh day after the original affidavit's execution).

4. We abated appellants' appeal so that the trial court could hold a hearing on appellants' motion for new trial.

## III. Constitutionality of Section 161.103(e) of the Texas Family Code

In the second issue raised in their supplemental brief, appellants assert that section 161.103(e) of the Texas Family Code is unconstitutional on its face under the Equal Protection Clause of the Fourteenth Amendment [5] because parents who relinquish their parental rights to a private individual can reserve a right of revocation while parents who relinquish their parental rights to the State or to a licensed child placing agency cannot.[6] The State asserts that appellants have waived their Equal Protection claim because they failed to present it to the trial court. We agree.

▆▆▆ It is well settled that challenges to the constitutionality of a statute may be waived.[7] The presumption is that a statute enacted by our legislature is constitutional, and attacks on that presumption should generally be raised as an affirmative defense to enforcement of the statute.[8] In the absence of such a complaint in the trial court, we are without authority to consider it.[9]

▆▆▆ In this case, appellants did not raise their constitutional challenge to section 161.103(e) in the trial court as an affirmative defense or otherwise.[10] The first time they raised the complaint is in their supplemental brief on appeal. We hold, therefore, that the complaint is waived.[11]

We recognize that in criminal cases, constitutional claims may be brought for the first time on appeal.[12] The rationale for

5. *See* U.S. CONST. amend. XIV.

6. *See* TEX. FAM.CODE ANN. § 161.103(e) (Vernon 2006) (stating that the relinquishment in an affidavit that designates the State as managing conservator is irrevocable but that a relinquishment in any other affidavit of relinquishment is revocable unless it expressly provides that it is not).

7. *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) (stating that constitutional complaints may be waived) *cert. denied,* — U.S. —, 126 S.Ct. 483, 163 L.Ed.2d 364 (2005); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex.2001) (holding that failure to assert constitutional claim in trial court bars appellate review of claim).

8. *See In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000).

9. *Wall v. Tex. Dep't of Family & Protective Servs.*, No. 03–04–00716, 2006 WL 1502094, at *1 (Tex.App.-Austin June 2, 2006, no pet.) (mem.op.) (holding that parent's constitutional challenge to section 161.001(e) of the family code was waived by the failure to make such a challenge in the trial court); *see Doe 2*, 19 S.W.3d at 284 (holding that the constitutionality of a statute should be considered only when the question is properly raised by a party in the trial court).

10. Appellants do not contend that they were in any way prevented from asserting their constitutional complaint in the trial court.

11. *Wall*, 2006 WL 1502094, at *1 (holding constitutional claim waived when raised for the first time on appeal); *see Kaye v. Harris County Mun. Util. Dist.*, 866 S.W.2d 791, 795–96 (Tex.App.-Houston [14th Dist.] 1993, no writ) (holding that if not properly raised in the trial court, court of appeals may consider only fundamental errors of constitutionality, i.e., errors affecting the court's jurisdiction or the general public interest); *Dallas Mkt. Ctr. Dev. Co. v. Beran & Shelmire*, 824 S.W.2d 218, 222–23 (Tex.App.-Dallas 1992, writ denied) (stating that the constitutionality of a statute must be raised in the trial court or it is waived). *But see In re D.L.*, 160 S.W.3d 155, 160 n. 1 (Tex.App.-Tyler 2005, no pet.); *In re B.S.W.*, 87 S.W.3d 766, 771–72 (Tex.App.-Texarkana 2002, pet. denied) (both holding that constitutional claims may be raised for the first time on appeal).

12. *See, e.g., Garcia v. State*, 887 S.W.2d 846, 861 (Tex.Crim.App.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); *Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987); *see also* 43A George E. Dix et al., TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE §§ 42.253–54 (2d ed.2001).

allowing such claims for the first time on appeal, however, is that criminal statutes go to the subject matter jurisdiction of the court.[13] A conviction or sentence based on a statute that is unconstitutional on its face is void from its inception, confers no power or authority on the court, and justifies no acts performed under it.[14] Therefore, a conviction based on a void statute is fundamental error and may be raised for the first time on appeal.[15]

■ In contrast, subject matter jurisdiction exists in civil cases when the nature of the case falls within a category of cases that the court is empowered to adjudicate under the applicable constitutional and statutory provisions.[16] Challenges to the constitutionality of a civil statute ordinarily go to the merits of a claim or cause of action, not to the civil court's subject matter jurisdiction.[17] Therefore, if a civil

court renders judgment on a claim that is within its subject matter jurisdiction, but a relevant statute is determined to be unconstitutional on its face, the judgment is merely rendered erroneous or voidable, not void.[18]

■ Here, it is undisputed that the trial court had subject matter jurisdiction over this parental termination case and that we have jurisdiction over the appeal. Appellants' constitutional complaint is unrelated to either court's subject matter jurisdiction. If we were to hold that the statute at issue is unconstitutional, our ruling would merely render the trial court's order erroneous and subject to reversal; it would not render the order void. Because appellants' constitutional claim would not render the trial court's order void, it is not fundamental error and cannot be asserted for the first time on appeal.[19] We overrule

---

13. See Fairfield v. State, 610 S.W.2d 771, 779 (Tex.Crim.App.1981) (stating that jurisdiction consists of the power of the court over the subject matter of the case, conveyed by statute or constitutional provision, coupled with personal jurisdiction over the accused, which is invoked by indictment or information); see also Prater v. State, 903 S.W.2d 57, 59 (Tex. App.-Fort Worth 1995, no pet.) (appellant could raise for the first time on appeal constitutionality of statute providing mandatory life sentence upon conviction).

14. See Reyes v. State, 753 S.W.2d 382, 383–84 (Tex.Crim.App.1988).

15. See id.; Barnett v. State, 201 S.W.3d 231, 232–33 (Tex.App.-Fort Worth 2006, no pet.); see also Lasher v. State, 202 S.W.3d 292, 298 (Tex.App.-Waco 2006, pet. ref'd); Webb v. State, 899 S.W.2d 814, 818 (Tex.App.-Waco 1995, pet. ref'd) (all holding that a defendant may challenge the constitutionality of a statute he is charged with violating for the first time on appeal).

16. See Pope v. Ferguson, 445 S.W.2d 950, 952 (Tex.1969), cert. denied, 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970).

17. See Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, 220 (1942), cert. denied, 320

U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943). Examples of constitutional challenges to civil statutes that may go to the subject matter jurisdiction of the court include (1) an assertion that a statute violates the separation of powers doctrine, Meshell v. State, 739 S.W.2d 246, 252 (Tex.Crim.App. 1987) (discussing separation of powers challenges) and (2) a complaint that a statute violates the open courts provision of the Texas Constitution. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445 (Tex.1993) (discussing how the open courts provision is a limitation on subject matter jurisdiction). In addition, it has been held that a statute that is unconstitutionally vague is void. See Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).

18. See Davis, 168 S.W.2d at 220; Kaye, 866 S.W.2d at 795–96; Beran & Shelmire, 824 S.W.2d at 222–23; Wall, 2006 WL 1502094, at *1.

19. In re B.L.D., 113 S.W.3d 340, 350–52 (Tex. 2003) (stating that except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties and declining to apply the criminal fundamental error doctrine in parental rights

appellants' second issue raised in their supplemental brief.

## IV. Unsigned Rule 11 Agreement

In their second issue, appellants assert that the trial court erred by terminating their parental rights based on the Rule 11 agreement because they did not sign the agreement.[20]

■ Under the Texas Rules of Civil Procedure,

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.[21]

It is well settled that the attorney-client relationship is an agency relationship; the attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts.[22] Thus, an attorney may execute an enforceable Rule 11 agreement on his client's behalf.[23]

■ In this case, Lane signed the agreement as "Attorney for Respondent Parents." Ronald admitted at the motion for new trial hearing that he understood that Lane had signed the agreement on appellants' behalf. Therefore, the mere fact that appellants did not sign the Rule 11 agreement does not render it unenforceable. We overrule appellants' second issue.

## V. Voluntariness of the Affidavits of Relinquishment

In their third issue, appellants argue that the trial court erred by terminating their parental rights based on their affidavits of relinquishment and the Rule 11 agreement because the evidence is legally and factually insufficient to show that they executed the affidavits voluntarily and knowingly. Appellants contend that the preponderance of the evidence shows that their affidavits were executed as a result of fraud, duress, and coercion.

■ Under the Texas Family Code, the trial court may terminate parental rights upon a finding, by clear and convincing evidence, that the parent has "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relin-

termination cases), *cert. denied,* 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004). In addition, the Supreme Court of Texas does recognize fundamental error in the limited situations "in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State." *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 577 (Tex.2006). Where an alleged error affects the rights of only particular litigants, as in this case, however, it does not adversely affect the interest of the public generally and does not rise to the level of fundamental error. *See Newman v. King,* 433 S.W.2d 420, 422 (Tex. 1968) (holding that error affecting a child plaintiff's rights affects the rights of only the particular minor and the particular litigants, does not adversely affect the interest of the public generally, and does not constitute fundamental error warranting reversal in the ab-

sence of objection); *see also Worden v. Worden,* 148 Tex. 356, 224 S.W.2d 187, 190–191 (1949) (holding no violation of fundamental public policy in a court's judgment of child custody).

20. *See* Tex.R. Civ. P. 11.

21. *Id.*

22. *Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690, 693 (Tex.1986); *see also Parker v. Poole,* 12 Tex. 86, 87 (1854) ("[T]he general maxim [is] that whatever a man sui juris may do of himself, he may do by another.").

23. *See, e.g., Southwestern Bell Tel. Co. v. Perez,* 904 S.W.2d 817, 822 (Tex.App.-San Antonio 1995, no writ) (stating that an attorney may consent to a Rule 11 agreement on his client's behalf).

quishment of parental rights as provided by this chapter" and that termination is in the best interest of the child.[24] Implicit in the family code is the requirement that the affidavit of voluntary relinquishment be voluntarily executed.[25] Evidence that an affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with family code section 161.103[26] is prima facie evidence of its validity.[27]

Once it has been shown by clear and convincing evidence that the affidavit of relinquishment was executed according to the requirements of section 161.103 of the family code, courts have traditionally held that the affidavit may be set aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of "fraud, coercion, duress, deception, undue influence, or overreaching."[28] The burden of proving such wrongdoing is on the party opposing the affidavit.[29]

Recently, however, a plurality of the Supreme Court of Texas, in separate concurring and dissenting opinions, has opined that both the burden and standard of proof for setting aside an affidavit of relinquishment should be "reformulated."[30] According to the plurality in *In re L.M.I.*, when an issue of involuntariness is raised, due process requires that the burden be on the proponent of the affidavit to establish, by clear and convincing evidence, that the affidavit was executed voluntarily.[31] As one justice stated in her dissenting and concurring opinion in *In re L.M.I.*:

> The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment requires that before a state can irrevocably sever the rights of a parent, the evidence of grounds for termination must at least be clear and convincing. Accordingly, when the basis for termination is an affidavit of relinquishment, there must be clear and convincing evidence that

**24.** TEX. FAM.CODE ANN. § 161.001(1)(K), (2) (Vernon Supp.2006); *In re D.R.L.M.*, 84 S.W.3d 281, 296–98 (Tex.App.-Fort Worth 2002, pet. denied); *In re V.R.W.*, 41 S.W.3d 183, 190 (Tex.App.-Houston [14th Dist.] 2001, no pet.), disapproved on other grounds by *In re J.F.C.*, 96 S.W.3d 256·(Tex.2002).

**25.** *V.R.W.*, 41 S.W.3d at 192; *Neal v. Tex. Dep't of Human Servs.*, 814 S.W.2d 216, 218–19 (Tex.App.-San Antonio 1991, writ denied).

**26.** TEX. FAM.CODE ANN. § 161.103 (Vernon Supp.2006) (listing the information that an affidavit relinquishing parental rights must contain).

**27.** *V.R.W.*, 41 S.W.3d at 190; *In re B.B.F.*, 595 S.W.2d 873, 875 (Tex.Civ.App.-San Antonio 1980, no writ).

**28.** *In re Bruno*, 974 S.W.2d 401, 405 (Tex. App.-San Antonio 1998, no pet.) (quoting *Coleman v. Smallwood*, 800 S.W.2d 353, 356 (Tex.App.-El Paso 1990, no writ)); *see also In re N.P.T.*, 169 S.W.3d 677, 681 (Tex.App.-

Dallas 2005, pet. denied); *D.R.L.M.*, 84 S.W.3d at 296–98; *Vela v. Marywood*, 17 S.W.3d 750, 758–59 (Tex.App.-Austin 2000), *pet. denied*, 53 S.W.3d 684 (2001) (all holding that the burden is on the party opposing the affidavit to show that it was executed as a result of fraud, duress, coercion, or some other wrongdoing).

**29.** *See N.P.T.*, 169 S.W.3d at 681; *D.R.L.M.*, 84 S.W.3d at 296–98; *Vela*, 17 S.W.3d at 758–59.

**30.** *See In re L.M.I.*, 119 S.W.3d 707, 715–16, 720, 739 (Tex.2003) (Wainwright, J., concurring), (Owen, J., concurring and dissenting, joined by Phillips, C.J., and joined in part by Hecht and Jefferson, JJ.), (Hecht, J., dissenting, joined by Jefferson, J.), *cert. denied*, 541 U.S. 1043, 124 S.Ct. 2175, 158 L.Ed.2d 733 (2004).

**31.** *See id.* at 715–16, 720, 739 (Wainwright, J., concurring), (Owen, J., concurring and dissenting), (Hecht, J., dissenting).

the waiver was knowing, intelligent, and voluntary.[32]

■ We agree with our sister court in Dallas that "there is considerable merit in applying the standard of review suggested in the concurring and dissenting opinions in [*In re*] *L.M.I.*"[33] However, we need not expressly decide that issue here because under either standard the result is the same—the evidence is sufficient to show that appellants voluntarily executed the affidavits. Rather than showing that appellants' execution of their affidavits was the result of wrongdoing, the evidence in this case establishes that appellants voluntarily, knowingly, and intelligently relinquished their rights to the children with full awareness of the legal consequences.

Prior to signing the affidavits of relinquishment, appellants met with their attorneys, their pastor, their pastor's wife, Willie Jean's sister, and Ronald's brother. Lane discussed the strengths and weaknesses of appellants' case with appellants, including his concerns that the State might prosecute them for child sexual assault and attempt to remove their unaffected children. After a discussion with Lane, appellants decided to sign the affidavits of relinquishment because they "did not want to lose [their unaffected child]" even though they knew that they "didn't do anything wrong to [the] children."

Lane's co-counsel, Patty Tillman, testified that she made sure that appellants fully understood the ramifications, finality, and magnitude of their decision to sign the affidavits by permitting appellants to consult their family members and pastor and allowing them to make the decision away from the courthouse. According to Till-

man, appellants agonized over their decision but were not coerced by anyone into signing the affidavits.

Paul Sanchez, appellants' pastor, testified that appellants were "emotionally distressed that morning [when they signed the affidavits] .... [and] not very coherent [about] what they were fixing to do, because [of] the time frame that was given to them to decide about the facts of their kids." He stated that Lane "kept on insisting ... [that appellants] sign [their] parental rights, then [the unaffected children] will not be taken, will not be removed from the home." Sanchez's wife, Gloria, noted that Willie Jean was "under total duress," "she wasn't thinking clearly," "she was crying, ... complaining, she didn't understand why she was to this point. Why did she have to sign these papers. She claimed to be innocent, her husband as well." Gloria said that when Ronald signed the affidavits, he "barely looked at [them], and he did not want to sign" and that he was "sobbing [and] ... shaking his head."

Nancy Cearley, Willie Jean's sister, stated that when Willie Jean signed the affidavits, "she didn't read the documents, she just scribbled her name" and that appellants were very upset when they signed the affidavits. Nancy also said that she told Willie Jean to sign the affidavits because Nancy was concerned about appellants losing the unaffected children.

In addition to consulting with their attorneys, pastor, relatives, and friends before executing the affidavits, appellants also heard the testimony of the children's foster parents and a CPS caseworker re-

---

**32.** *Id.* at 716 (Owen, J., concurring and dissenting) (citing *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

**33.** *See N.P.T.,* 169 S.W.3d at 680.

garding the children's outcries. These outcry statements included allegations that Willie Jean had sexually assaulted J.B., appellants' thirteen-year-old daughter; that both appellants had sexually assaulted and Willie Jean had physically assaulted A.B., appellants' six-year-old daughter; that at least two of appellants' male family friends had sexually assaulted J.B., A.B., and S.B., appellants' twelve-year-old daughter; that Ronald had sexually assaulted J.B., appellants' three-year-old son; that the children frequently watched pornographic movies together, which their parents encouraged; and that the children engaged in sexual activities together.

Based on this evidence, we hold that there is not only clear and convincing evidence that appellants executed the affidavits of relinquishment voluntarily, but there is no evidence that appellants' execution of the affidavits of relinquishment was the result of coercion, duress, fraud, or any other form of wrongdoing. While appellants may have been under considerable pressure to make a decision, the record shows that they were represented by counsel, were aware of the documents they were signing, and understood the consequences.[34] Ronald admitted that it was "[his] decision and [his] wife's decision to go ahead and sign the affidavits ... based on all of the advice that [he was] receiving from both of [his] lawyers as well as his support system" but that "now [he] regret[s] that." The fact that appellants may have been faced with potential criminal charges or the removal of their unaffected children does not prove that the affidavits of relinquishment were wrongfully procured.[35] We overrule appellants' third issue.

## VI. Hearing on Motion for New Trial

In their first issue, appellants complain that the trial court erred by failing to hold a hearing on their motion for new trial within the statutory time period.[36] Appellants, however, conceded during oral argument that the issue was rendered moot because the trial court did, in fact, hold such a hearing. We, therefore, overrule appellant's first issue as moot.

## VII. Conclusion

Having overruled appellants' four issues, we affirm the trial court's judgment.

WALKER, J. concurs without opinion.

---

34. *See Lumbis v. Tex. Dep't of Protective & Regulatory Servs.,* 65 S.W.3d 844, 850–51 (Tex.App.-Austin 2002, pet. denied) (holding that when mother extensively discussed the consequences of an affidavit of relinquishment with her attorney, the affidavit of relinquishment was voluntarily signed even though mother was emotionally upset and believed that she might be able to have post-adoption contact with her children at the time she signed it).

35. *Cf. N.P.T.,* 169 S.W.3d at 681("being faced with an unfavorable jury decision does not automatically warrant a finding that the affi-davit of relinquishment was wrongfully procured"); *Bruno,* 974 S.W.2d at 402–03, 405–06 (holding that affidavit of relinquishment was voluntarily executed even though mother signed affidavit while emotionally upset and was afraid of what her family would think).

36. *See* TEX. FAM.CODE ANN. § 263.405(d) (Vernon Supp.2006) (providing that a trial court must hold a hearing not later than the thirtieth day after the date the final order is signed to determine whether a new trial should be granted).