Affirmed and Opinion filed April 12,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-01036-CV



James Green and
Prince Ella Green, Appellants 

v.

Midland Mortgage
Co. and Barrett Burke Wilson Castle Daffin & Frappier, LLP, Appellees 



On Appeal from
the 405th District Court

Galveston County, Texas

Trial Court
Cause No. 08CV0102



 

OPINION 

In six issues, appellants,
James and Prince Ella Green (“the Greens”), challenge the trial court’s order
granting summary judgment in favor of appellees, Midland Mortgage Co.
(“Midland”) and Barrett Burke Wilson Castle Daffin & Frappier, LLP (“Barrett
Burke”), on their breach of contract counterclaim.[1]  We affirm.

I.                  
Factual and Procedural Background

During the time period
relevant to this appeal, the Greens owned several properties, including one
located in Texas City known as the 4th Street property.[2]  Cenlar
Federal Savings Bank (“Cenlar”) was the servicing agent for the loan secured by
the 4th Street property.  According to the Greens, they sold the 4th Street
property on September 29, 1995, subject to the mortgage held by Cenlar.

On December 4, 1995, the Greens filed
for Chapter 13 bankruptcy.  The bankruptcy court granted the Greens a discharge
on July 12, 2000.  The Greens claim that the debt owed to Cenlar on the 4th
Street property was discharged in the bankruptcy.  Cenlar later sold the loan
to Aurora Loan Services, LLC (“Aurora”), and Aurora subsequently sold the loan
to Midland.  The Greens claim that despite the debt’s having been discharged, Cenlar,
Aurora, and Midland continued to report the alleged debt to credit bureaus as
delinquent.

On February 1, 2008, the
Greens sued Midland, Cenlar, and Aurora, alleging numerous causes of action based
on the events described above.[3] 
On August 12, 2008, they amended their petition to add Barrett Burke, Midland’s
counsel, as a defendant.[4]

In early 2009, Steve Leyh, Midland
and Barrett Burke’s attorney, discussed settlement of the Greens’ claims with
Michael Weston, the Greens’ attorney.  On April 3, 2009, Weston sent the
following e-mail to Leyh:

Steve —

While we are waiting to get the terms finalized, please
confirm that we have a deal to settle this case for 40K.

Please advise.

Thanks, 

Mike

That same day, Leyh
responded to Weston in an e-mail stating, in pertinent part, as follows:

Yes we have a settlement.  BDF
and Midland pay the Greens a total sum of $40,000.00, mutual releases of all
claims known and unknown in full from dawn of time until day of execution, case
dismissed with prejudice, serious confidentiality provision, Green’s [sic] stop
all “administrative” remedies, Midland never credit reports on the Greens
again, and the remaining details to be worked out later on, in formal
settlement documents. 

* *
* *

Less than an hour later, Weston
replied to Leyh, in part, as follows:

Great, clients have agreed to those terms. * * * *

In
response to Leyh’s request, Midland and Barrett Burke received an executed W-9
form from Weston and prepared a settlement check on April 28, 2009.  On April
30, 2009, Mr. Green sent an e-mail to Weston stating that he had reviewed the
draft settlement agreement and release, he had found “a couple of clerical
errors,” he would review the document again and get back to Weston, and there
were some items he would like to add to the agreement.

On
May 6, 2009, Leyh and Weston signed a Rule 11 agreement which stated, in
relevant part, as follows:

Dear Mike, 

This letter is a Rule 11 agreement to be filed in the case
to advise the court, that [Midland and Barrett Burke] and [the Greens] have
settled claims between them in this matter.

The parties are currently working on settlement documents
and expect to have those resolved in the near future.

The
Rule 11 agreement was filed with the court on May 7, 2009.  

On
May 11, 2009, Mr. Green sent an e-mail to Weston notifying him that he and Mrs.
Green did not want to settle with Midland and Barrett Burke.  On May 14, 2009,
Leyh sent a draft of the settlement agreement and release to Weston which
incorporated the edits requested by the Greens.  In a letter dated May 23,
2009, the Greens asked Weston to withdraw as their attorney in the case, and
Weston subsequently withdrew.  

When
Midland and Barrett Burke learned that the Greens no longer intended to execute
the agreement, they each filed a second amended answer on June 10, 2009, in
which they asserted a counterclaim for breach of contract and sought
enforcement of the settlement agreement.  On June 10, 2009, Midland and Barrett
Burke moved for summary judgment on their counterclaim; on August 13, 2009, they
filed an amended summary judgment motion.  On September 4, 2009, the trial
court granted appellees’ amended motion and ordered enforcement of the
agreement.  This appeal followed.

II.              
Standard of Review

We
review summary judgments de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  The party moving for a traditional summary
judgment bears the burden to show that no genuine issue of material fact exists
and that it is entitled to judgment as a matter of law.  Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004); Tex. R. Civ. P.
166a(c).  A genuine issue of material fact exists if more than a scintilla of
evidence establishing the existence of the challenged element is produced.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  In reviewing a
summary judgment motion, we indulge every reasonable inference from the
evidence in favor of the non-movant, resolve any doubts arising from the
evidence in its favor, and take as true all evidence favorable to it.  Malcomson
Rd. Util. Dist. v. Newsom, 171 S.W.3d 257, 263 (Tex. App.—Houston [1st
Dist.] 2005, pet. denied).

III.           
Analysis

A.    Rule
11 Agreement

In their first issue, the Greens contend
that the Rule 11 agreement is invalid and cannot support enforcement of the
settlement agreement.  In their third issue, the Greens claim that they raised an
affirmative defense sufficient to defeat summary judgment.  In their fourth issue,
they assert that there are genuine issues of material fact precluding summary
judgment.  Because these arguments are intertwined, we address them together.[5]

Under Texas Rule of Civil Procedure 11,
no agreement between the attorneys or parties to a suit is enforceable unless
it is in writing, signed, and filed with the papers as part of the record, or
unless it is made in open court and entered of record.  See Tex. R. Civ.
P. 11.[6] 
A settlement agreement must comply with Rule 11 to be enforceable.  See
Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995).  To satisfy the “in
writing” component of Rule 11, the contract principles that are used in determining
whether a “writing” satisfies the statute of frauds apply equally to Rule 11
agreements.  See id.  Thus, “there must be a written memorandum which is
complete within itself in every material detail, and which contains all of the
essential elements of the agreement, so that the contract can be ascertained
from the writings without resorting to oral testimony.”  Id. (quoting Cohen
v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978)).  The written memorandum,
however, need not be contained in one document.  Id.

Padilla v. LaFrance
is dispositive in this case.  In Padilla, the parties had exchanged a
series of letters regarding terms of a settlement while a lawsuit was pending
against Enrique Padilla.  See 907 S.W.2d at 455.  Padilla claimed that
the letters represented a written settlement between the parties and asked the
trial court to enforce the agreement.  See id. at 457.  The plaintiffs,
however, contended that there was no written agreement between the parties.  See
id.  

The Texas Supreme Court concluded that
the series of letters between the parties were sufficient to constitute an
agreement in writing satisfying Rule 11.  See id. at 460.  In doing so, the
Court noted that the letters specifically confirmed a settlement agreement
between the parties and contained all the material terms of the agreement:  an
agreement to pay a specified sum of money in exchange for the settlement of all
claims.  See id. at 460–61.   

Here, the series of e-mails between
Weston and Leyh dated April 3, 2009 and the Rule 11 letter dated May 6, 2009,
similarly confirmed a settlement agreement between the parties.  In answer to
Weston’s e-mail to Leyh requesting that Leyh “please confirm that we have a
deal to settle this case,” Leyh responded “[y]es, we have a settlement.” 
Weston then replied “[g]reat, clients have agreed to those terms.”  Further,
the Rule 11 letter signed by Weston and Leyh, and filed with the court the
following day, stated that the parties had settled the Greens’ claims. 
Moreover, the e-mail exchange reflects all the material terms of the agreement:
Midland and Barrett Burke agreed to pay the Greens $40,000 in exchange for the
settlement and release of all claims between the parties.   

The Greens also contend that the Rule 11
letter is invalid because (1) they did not sign the letter; (2) the letter is
not a sworn document; (3) the settlement agreement was ambiguous; (4) the Rule
11 letter was not executed and delivered; and (5) Weston did not have authority
to bind them to a settlement agreement.

First, the Greens’ arguments that the
Rule 11 agreement is invalid because the Greens did not sign it, and Weston
lacked the authority to bind them, are without merit.  Although the Greens
asked Weston to withdraw from the case in a letter dated May 23, 2009, the
undisputed evidence reflects that he was their attorney of record at the time
the April 3, 2009 e-mails between Weston and Leyh were exchanged, when the Rule
11 agreement was signed and filed with the court, and when the mutual release
was drafted and corrections were requested and made in early May 2009.  “The
attorney-client relationship is an agency relationship[;] the attorney’s acts
and omissions within the scope of his or her employment are regarded as the
client’s acts[.]”  Gavenda v. Strata Energy, Inc., 705 S.W.2d 690, 693
(Tex. 1986).  Thus, an attorney may execute an enforceable Rule 11 agreement on
his client’s behalf.  See In re R.B., 225 S.W.3d 798, 803 (Tex.
App.—Fort Worth 2007, no pet.).  Here, Weston executed the Rule 11 agreement on
his clients’ behalf; the Greens’ signatures were not required.  See id.

Second, the Greens’ contention that
the Rule 11 agreement is invalid because it is not a sworn document is equally
unavailing.  The Greens have cited no authority for their assertion that a Rule
11 agreement must be sworn, and we are not aware of any.  

Third, as to their assertion that the
underlying settlement agreement is ambiguous, the Greens neither identify which
terms of the agreement they believe are ambiguous, nor provide any argument or citation
to legal authority in support of their position.  Having failed to adequately
brief this issue on appeal, the Greens have waived error.  See Tex. R.
App. P. 38.1(h) (“The brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the
record.”); Lundy v. Masson, 260 S.W.3d 482, 503 (Tex. App.CHouston [14th Dist.] 2008, pet.
denied) (concluding that appellant failed to provide argument or cite authority
for contention on appeal and appellate court was Anot required to do the job of the
advocate@).[7]

Fourth, the Greens’ claim that the underlying
settlement agreement is unenforceable because it was not executed and delivered
is without merit.  The Rule 11 agreement confirming that the parties had
reached a settlement—the terms of which had been previously set forth in the
e-mail exchange between Weston and Leyh—was signed by Leyh and Weston, acting
in his capacity as the Greens’ attorney, and was filed with the court on May 7,
2009.

We conclude that the series of
e-mails between Weston and Leyh and the Rule 11 agreement were sufficient to constitute
an agreement in writing satisfying Rule 11 and support enforcement of the
settlement agreement.  We overrule issues one, three, and four.

B.     Evidentiary Hearing   

In
their second issue, the Greens argue that the trial court was required to conduct
an evidentiary hearing before ruling on appellees’ summary judgment motion.  We
disagree.  We initially note that the hearing contemplated by summary judgment procedure need not be oral,
but can be conducted by written submission.  See Owen Elec. Supply, Inc. v.
Brite Day Constr., Inc., 821 S.W.3d 283, 288 (Tex. App.—Houston [1st
Dist.] 1991, writ denied).  However, even if an oral hearing occurs, oral
testimony cannot be adduced.  See Tex. R. Civ. P. 166a(c) (“No oral
testimony shall be received at the [summary judgment] hearing.”).  We overrule issue two.

 

C.   
Consent

In
issue five, the Greens argue that the settlement is unenforceable because there
was no consent at the time the judgment was rendered on the agreement.  In
support of their position, they rely on S&A Restaurant Corp. v. Leal,
892 S.W.2d 855 (Tex. 1995), Burnaman v. Heaton, 240 S.W.2d 288 (Tex.
1951), and Quintero v. Jim Walter Holmes, Inc., 654 S.W.2d 442 (Tex.
1983).

A
review of the authorities cited above makes it clear that the Greens confuse
the requirements for an agreed or consent judgment with those for an enforceable
settlement agreement.  See Leal, 892 S.W.2d at 857 (noting agreed judgment
rendered after one of the parties revokes his consent is void); Burnaman,
240 S.W.2d at 291 (concluding court cannot render valid consent judgment when consent
of one of the parties is wanting); Quintero, 654 S.W.2d at 444 (noting
party has right to revoke consent at any time before rendition of agreed
judgment).  The Padilla court stated

Although a court cannot render a valid agreed judgment
absent consent at the time it is rendered, this does not preclude the court,
after proper notice and hearing, from enforcing a settlement agreement
complying with Rule 11 even though one side no longer consents to the
settlement.  The judgment in the latter case is not an agreed judgment, but
rather is a judgment enforcing a binding contract.

Padilla,
907 S.W.2d at 461.

An
action to enforce a settlement agreement, where consent is withdrawn, must be
based on proper pleading and proof.  Id. at 462.  Midland and Barrett
Burke filed a counterclaim seeking enforcement of the parties’ agreement, and they
later moved for summary judgment on that claim.  As discussed above, the
summary judgment evidence established an enforceable settlement agreement as a
matter of law.  

The
trial court did not err in granting Midland and Barrett Burke’s motion for
summary judgment and in enforcing the settlement agreement.  We overrule issue
five. [8]

IV.            
Conclusion

Having
overruled all of the Greens’ issues, we affirm the trial court’s judgment.

 

 

 

 

/s/        Adele
Hedges 

Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Frost and Christopher.

 









[1]
In their brief, appellees state that Barrett Burke Wilson Castle Daffin &
Frappier, LLP is now known as Barrett Daffin Frappier Turner & Engel, LLP. 
For clarity, we will refer to this party as Barrett Burke.  





[2]
Although the history of events giving rise to this suit is lengthy and
convoluted, a review of the background facts is helpful to a proper discussion
of the appeal.   





[3]
The Greens asserted claims under the Texas Deceptive Trade Practices Act, the
Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Texas
Debt Collection Act, the United States Bankruptcy Code, as well as common law
claims of fraud, negligence, negligent misrepresentation, breach of contract,
conspiracy, and defamation.





[4] On May 20, 2009, Cenlar and Aurora were nonsuited.

 





[5]
Midland and Barrett Burke contend
that Mr. Green has not raised any issue for review because he did not sign the
appellate brief filed in this appeal.  See Tex. R. App. P. 9.1(b)
(requiring parties not represented by counsel to sign all documents filed with
court).  While it is true that Mr. Green’s signature does not appear at the
bottom of the brief, his signature on the accompanying certificate of service
is sufficient to satisfy the requirements of Texas Rule of Appellate Procedure
9.1(b).  See Chavez v. State, 08-02-00008-CR, 2003 WL 68172, at *1 (Tex.
App.—El Paso Jan. 9, 2003, no pet.) (finding that although pro se appellant had
not signed notice of appeal, he had signed certificate of mailing that
accompanied notice and, thus, notice of appeal was “signed” within meaning of
TRAP 9.1(b)).





[6]
To prevail on their breach of contract counterclaim, Midland and Barrett Burke
had to show (1) a valid contract, (2) that they performed or tendered
performance, (3) that the Greens breached the contract, and (4) that they
sustained damages as a result of the breach.  See B&W Supply, Inc. v.
Beckman, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). 
In their summary judgment response as well as their appellate brief, the Greens
challenge only the first element of appellees’ counterclaim, i.e., the
validity of the settlement agreement.  Having failed to present any argument or
cite to any authority regarding the remaining elements, the Greens have waived
any argument as to those elements on appeal.  See Tex. R. App. P. 38.1 (f), (i); see also Canton-Carter
v. Baylor College of Medicine, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th
Dist.] 2008, no pet.) (“In the review of a civil case, an appellate court has
no discretion to consider an issue not raised in an appellant’s brief.”).





[7]
The Greens are appearing pro se on appeal, and we construe their appellate
brief liberally.  See Harris v. Showcase Chevrolet, 231 S.W.3d 559, 561
(Tex. App.—Dallas 2007, no pet.).  Nonetheless, a party proceeding pro se must
still comply with all applicable procedural rules.  See id.  If that
were not the case, pro se litigants would be afforded an unfair advantage over
those represented by counsel.  See Cooper v. Circle Ten Council Boy Scouts
of America, 254 S.W.3d 689, 693 (Tex. App.—Dallas 2008, no pet.). 
Therefore, on appeal, the pro se litigant must properly present his case.  See
Strange v. Cont’l Cas. Co., 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004,
pet. denied).





[8]
In a related sixth issue, the Greens appear to argue that they could not have
made changes to the mutual release on May 11, 2009, as appellees claim, because
there was a lack of consent by that time and, thus, there was no valid
agreement to which they could make changes.  As previously discussed, the Rule
11 agreement and e-mail exchange between Leyh and Weston dated April 3, 2009,
established that the parties had entered into an enforceable settlement
agreement.  Further, the enforceability of the agreement was not contingent
upon the language of the release—all of the material terms of the agreement and
confirmation of the settlement were contained in the series of e-mails between
Leyh and Weston and the Rule 11 agreement.  Consequently, we overrule issue
six.