**REVERSE and REMAND in part; AFFIRM in part and Opinion Filed March 29, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01328-CV

## IN THE INTEREST OF J.S., JR. & S.S., CHILDREN

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-13-00877-W**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Whitehill
Opinion by Justice Bridges

Father appeals the termination of his parental rights. In seven issues, he challenges the validity of a rule 11 agreement, the sufficiency of the evidence to support termination and appointment of the Texas Department of Family and Protective Services as managing conservator (the Department), and the ineffective assistance of counsel. We reverse the trial court's judgment, in part, affirm in part, and remand to the trial court for further proceedings. Because the issues in this case are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### Background

Father and Mother are the parents of two children, JS, Jr. (a son) and SS (a daughter). The Department's original involvement with the family began in August 2013 when it filed its original petition for temporary managing conservatorship, permanent managing conservatorship, and for termination in a suit affecting the parent-child relationship. The trial court entered a SAPCR order on March 20, 2015 in which it appointed relatives joint managing conservators and Mother

possessory conservator. The order allowed Father visitation as arranged and supervised by the joint managing conservators.

In September 2016, CPS investigated potential domestic violence in the children's home.[1] On November 7, 2016, the Department filed a motion to modify prior order and petition for protection of the children, for conservatorship, and for termination in the suit affecting the parent-child relationship. The trial court granted the Department temporary managing conservatorship of the children. The court ordered Mother to complete parenting and individual counseling, a psychological evaluation, and random drug testing because a drug test indicated she used methamphetamine. Father was not ordered to complete any services because he was incarcerated.[2]

Mother completed part of her services and was granted a monitored return in November 2017. The monitored return was unsuccessful.

Subsequently, a rule 11 agreement was executed in which the Department agreed to conduct a home study of Luz Maria Raez, the Father's aunt. Based on the rule 11 agreement, if the Department or the ad litems denied placement with Raez, then the court would hold a placement hearing. The home study was denied, in part, because of Raez's criminal history and financial issues hindering her ability to care for the children.

The court then held a placement hearing to determine whether the children should be placed with Raez. At the conclusion of the hearing, the trial court determined, "I can't find it would be safe to place these kids with the aunt considering these kids have gone back and forth between family members and foster care, considering that on both sides of the family there's drug involvement."

---

[1] The domestic violence incident did not involve Father.

[2] The circumstances concerning Father's incarceration at that time are unclear. The record contains a deferred adjudication order entered on April 17, 2014 for assault bodily injury family violence in which he pleaded guilty and received three years' deferred and a $2,000 fine. The record also contains the State's motion to revoke probation and proceed with an adjudication of guilt; however, we have no order granting the State's motion.

In accordance with the rule 11 agreement, the Department requested termination of Mother's parental rights pursuant to family code section 161.001(b)(1)(O) and best interest of the child and termination of Father's rights pursuant to section 161.001(b)(1)(Q) and best interest of the child.

The court adopted the rule 11 agreement and incorporated it into the final termination order. Mother and Father's parental rights were terminated, and the Department was appointed permanent managing conservator. Father now appeals.[3]

## Validity of Rule 11 Agreement

In his first issue, Father argues the trial court abused its discretion by entering judgment on a rule 11 agreement when there was no evidence Father consented to or gave his attorney authority to enter into it. The State responds Father failed to preserve his issue for review, or alternatively, nothing in the record rebutted the presumption that Father's attorney had authority to sign the rule 11 agreement on his behalf.

The rule 11 agreement provided, in relevant part, the following:

> We, the undersigned parties, as evidenced by our signatures below, agree to compromise and settle the claims and controversies between us, including all claims of termination of parental rights, conservatorship, child support, and possession and access disputes regarding the [children]. . . .
>
> 4.     If the child is not placed with Luz Maria Reyes [sic] pursuant to any terms of this Agreement, CPS shall request termination of the parental rights of the mother based on Section 161.001(b)(1)(O) of the Texas Family Code and best interest and no other grounds, and on the father based on Section 161.001(b)(1)(Q) of the Texas Family Code and best interest and no other grounds, and the parents agree to the termination of their parental rights pursuant to this Section.

Texas Rule of Civil Procedure 11 provides that, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be

---

[3] Mother has not appealed termination of her parental rights.

in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. It is well-settled the attorney-client relationship is an agency relationship in which the attorney's acts and omissions within the scope of his employment are regarded as the client's acts. *See In re R.B.*, 225 S.W.3d 798, 803 (Tex. App.—Fort Worth 2007, no pet.). Thus, an attorney may execute an enforceable rule 11 agreement on his client's behalf. *Id.* (upholding rule 11 agreement despite parents not signing it when attorney signed on their behalf and father understood attorney signed on his behalf). Generally, a court will indulge every reasonable presumption to support a settlement agreement made by a duly employed attorney. *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied). However, when evidence reveals that the attorney did not have the client's authority, the agreement will not be enforced. *Id.*; *see also City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 629 (Tex. App.—Fort Worth 2003, pet. denied). The presumption of an attorney's authority is rebuttable. *See Carburante Land Mgmt., LLC v. Hopkins*, No. 07-10-00398-CV, 2012 WL 1970115, at *7 (Tex. App.—Amarillo June 1, 2012, no pet.) (mem. op.); *see also City of Roanoke*, 111 S.W.3d at 629.

In addition to these general principles, Texas has a policy of encouraging the "peaceful resolution of disputes," particularly disputes involving the parent-child relationship. *See Brooks v. Brooks*, 257 S.W.3d 418, 421 (Tex. App.—Fort Worth 2008, pet. denied). Trial and appellate courts are charged with the responsibility of carrying out this public policy. *Id.* In furtherance of this policy, the Texas Family Code provides that a mediated settlement agreement "is binding on the parties" if the agreement complies with the following:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM. CODE ANN. § 153.0071(d).

Here, nothing in the record indicates Father's attorney lacked authority to enter into the agreement on his behalf. Thus, the State contends Father failed to overcome the strong presumption of the validity of the rule 11 agreement. However, the rule 11 agreement, on its face, does not strictly comply with section 153.0071(d)(2), which requires each party's signature.

In *Lockwood v. Texas Department of Family and Protective Services*, No. 03-12-00062-CV, 2012 WL 2383781, at *3 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.), the court considered whether the general rebuttable presumption of an attorney's authority to sign agreements on behalf of a client applied in the family law context. In that case, it was undisputed mother was not physically present at the settlement conference regarding termination of her parental rights and did not sign the settlement agreement. *Id.* at *4. The Department argued the general presumption applied based on mother's attorney's representation, her attorney's presence at the settlement conference, and her attorney's signature on both the mediated settlement agreement and the final judgment. *Id.* The court disagreed. Applying the presumption would contravene section 153.0071(d)'s requirement that *both* the parties *and* their attorneys (if any) sign the agreement. *Id.* In addition, allowing an attorney's signature to substitute for a party's signature would render section 153.0071(d)'s disclaimer requirement effectively meaningless because there would be no assurance that the notice regarding irrevocability was actually conveyed to the client with the statutorily mandated prominence. *Id.* "It would be absurd to construe section 153.0071(d) in a manner that effectively renders two of three express requirements superfluous." *Id.* (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (legislative intent is found in plain meaning of text unless different meaning is apparent or literal application would lead to absurd results)). The absence of mother's signature created doubt about whether she consented to

the mediated settlement agreement and whether she was adequately apprised of its essential terms. *Id.*

We agree with the court's reasoning in *Lockwood*. Considering the plain language of the statute and the important rights and interests at stake in SAPCR proceedings, strict compliance with section 153.0071(d) is essential to forming a binding and irrevocable agreement. *See In re H.H.*, No. 05-15-01322-CV, 2016 WL 556131, at *3 (Tex. App.—Dallas Feb. 12, 2016, no pet.) (mem. op.) (concluding mediated settlement agreement not binding on father when he failed to sign it). In this case, it is undisputed Father did not sign the rule 11 agreement, which stated in bold, capital letters, in part, that "THIS AGREEMENT MEETS THE REQUIREMENTS OF SECTION 153.0071(d) OF THE TEXAS FAMILY CODE." Accordingly, the statute's requirements were not satisfied, and the agreement is no evidence supporting the trial court's termination order. *See id.*

In reaching this decision, we reject the State's argument that Father waived his complaint by failing to object to the rule 11 agreement. *Id.* at *1-2 (concluding unsigned MSA was binding on Father pursuant to section 153.0071 despite father not raising argument in motion for new trial).

We sustain Father's first issue.

### Termination Pursuant to Section 161.001(b)(1)(Q)

In his second and third issues, Father argues the evidence is legally and factually insufficient to support termination of his parental rights under section 161.001(b)(1)(Q). Because the rule 11 agreement is no evidence supporting the trial court's termination order, we consider whether the record contains other evidence supporting termination of Father's parental rights under subsection Q.

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm

–6–

belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. If, after conducting its legal sufficiency review of the evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. *Id*. Rendition of judgment in favor of the parent would generally be required if there is legally insufficient evidence. *Id*.

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense, and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(Q). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegations sought to be established. *Id*. § 101.007.

Subsection Q applies prospectively. *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003). Thus, if a parent is convicted and sentenced to serve at least two years and will be unable to provide for his child during that time, the state may use subsection Q to ensure that the child will not be neglected. *Id*. But a two year sentence does not automatically meet subsection Q's two year imprisonment requirement because neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (evidence of the availability of parole is relevant to determine whether the parent will be released within two years but parole decisions are "inherently speculative").

Here, the record indicates the Department filed its petition on November 7, 2016. Thus, the record must establish Father's incarceration resulted in his inability to care for the children for "not less than two years" from that date, meaning November 7, 2018. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) (Subsection Q looks at whether the incarcerated parent will be unable to care for the child for two years from the date when the termination petition is filed). During the August 6, 2018 placement hearing, a caseworker testified Father was in federal prison for manufacturing and delivering drugs. When asked if she knew how long, she answered, "He's been incarcerated since 2016, the duration of this case." Raez testified the last time she saw Father was "right before he was incarcerated . . . about two years maybe." Other than these two vague witness references, the State did not provide any further evidence about Father's federal drug charge, sentence, or possible release date. *See, e.g.*, *In re H.H.*, No. 05-15-01322-CV, 2016 WL 556131, at *3 (Tex. App.—Dallas Feb. 12, 2016, no pet.) (mem. op.) (caseworker testimony that father was currently incarcerated at time of termination hearing, without more, was legally and factually insufficient to support termination). Thus, when the trial court signed the termination decree on September 18, 2018, the State had not met its burden satisfying the requirements of section 161.001(b)(1)(Q). *See In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The party seeking the termination of parental rights bears the burden of proof."); *see also In re J.R.*, 319 S.W.3d 773, 777 (Tex. App.—El Paso 2010, no pet.) (evidence legally insufficient to support termination under subsection Q because mother presented no evidence as to length of father's sentence or likely date of parole or release).

To the extent the State relies on a June 16, 2018, letter Father wrote to the trial court stating, in part, when he believed he might be released, the State's reliance is misplaced. This letter was not admitted into evidence during the hearing. It was the State's burden to bring forth sufficient evidence supporting termination. *In re A.L.H.*, 468 S.W.3d at 744. Moreover, statements by an

–8–

incarcerated parent as to his belief about release is mere speculation. *See, e.g., In re A.E.G.*, No. 12-11-00307-CV, 2012 WL 4502085, at *9–10 (Tex. App.—Tyler Sept. 28, 2012, no pet.) (mem. op.) (the Department, and not father, had the burden to show father would not be released within two years; father's statements regarding his release date were speculation and Department offered no evidence from authoritative source regarding release date).

Accordingly, we conclude the record contains legally insufficient evidence to support the trial court's termination of the parent-child relationship between Father and the children on the grounds that Father knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See, e.g., In re H.H.*, 2016 WL 556131, at *3. We sustain Father's second issue. We need not address Father's third, fourth, fifth, and sixth issues. *See* TEX. R. APP. P. 47.1.

## Conservatorship

In his seventh issue, Father argues the trial court abused its discretion by appointing the Department as managing conservator, and instead, the trial court should have appointed Raez as the children's managing conservator. The State responds the trial court did not abuse its discretion in appointing the Department as managing conservator in light of the evidence presented.

The standard of review for the appointment of a non-parent as sole managing conservator is less stringent than the standard of review for the termination of parental rights. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Unlike the standard of proof for the termination of parental rights, the findings necessary to appoint a non-parent as sole managing conservator need only be established by a preponderance of the evidence. *Id.* at 616; *see* TEX. FAM. CODE ANN. § 105.005. Moreover, we review a trial court's appointment of a non-parent as sole managing conservator for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d at 616. Accordingly, we will reverse a trial court's

–9–

appointment of a non-parent as sole managing conservator only if we determine that it is arbitrary or unreasonable. *Id.*

When applying an abuse-of-discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are factors used in assessing whether the trial court abused its discretion. *In re R.L.*, No. 01-16-00851-CV, 2017 WL 1496955, at *13 (Tex. App.—Houston [1st Dist.] Apr. 21, 2017, no pet.) (mem. op.). However, an abuse of discretion does not occur if the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Id.*

In a legal sufficiency review, we consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). In a factual sufficiency review, we consider all the evidence for and against the challenged finding and set it aside only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial court is the sole judge of the credibility of the witnesses. *In re R.L.*, 2017 WL 1496955, at *13.

Father does not argue that he should have been appointed managing conservator of the children, but instead, argues Raez was a "suitable placement." At the placement hearing, Raez admitted to a 2013 felony drug conviction in which she was incarcerated for thirty-seven months. At the time of trial, she was still on probation. In addition to her own criminal past, her current boyfriend was arrested in 2001 for possession of a controlled substance. She was unaware of the arrest. She admitted she remained in contact with Father despite his incarceration.

Raez seemed to not understand why the Department had concerns about placing the children with her when she continued to have contact with individuals involved with drugs. For example, the State asked her if she agreed "the adults that are in these children's life should be

responsible people . . . and people who don't use drugs or don't smuggle drugs or don't commit domestic violence?" She answered, "It just depends."

The trial court also heard evidence from her other children that she was a kind, supportive, loving mother. Her oldest son testified he graduated from college because of her love and support. Raez's boyfriend described her as responsible, hard-working, and dedicated. A church member testified she was an involved parent and good role model.

The trial court also heard testimony from the children's counselor. She explained the children were thriving in their foster placement. Prior to placement, the "shuffling" between Mother and foster care had been difficult on S.S., who suffers from anxiety. She testified structure was in the children's best interest, and another removal would be difficult and not in their best interest. She believed another removal could exacerbate S.S.'s anxiety, which she described as "severe."

At the conclusion of the hearing, the trial court acknowledged, "It's always my policy to place with children - - with family whenever that's safe. However, I can't find it would be safe to place these kids with the aunt considering these kids have gone back and forth between family members and foster care, considering that on both sides of the family there's drug involvement." The trial court stated that Raez's and her boyfriend's testimony was "incredible."

After considering all of the evidence in the light most favorable to the challenged finding and all the evidence for and against the challenged finding, we cannot conclude the trial court acted arbitrarily or unreasonably by not appointing Raez as managing conservator and instead appointment the Department. We overrule Father's seventh issue.

**Conclusion**

Father requests we reverse and remand to the trial court for further proceedings. Remand is appropriate when, for any reason, a case has not been fully developed below. *See In re H.H.*,

2016 WL 556131, at *3–4. We recognize that rendition of judgment in favor of Father would generally be required where, as here, there is legally insufficient evidence. *In re J.F.C.*, 96 S.W.3d at 266. However, appellate courts have broad discretion to remand in the interest of justice. *See In re H.H.*, 2016 WL 556131, at *4. We conclude remand of this case is appropriate. We reverse the trial court's order terminating Father's parental rights, affirm the trial court's order terminating Mother's parental rights, and remand the case for further proceedings. In all other respects, the judgment of the trial court is affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

181328F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF J.S., JR. & S.S., CHILDREN

No. 05-18-01328-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-13-00877-W.
Opinion delivered by Justice Bridges.
Justices Brown and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment terminating the parental rights of Joe Manuel Salinas and **REMAND** for further proceedings. In all other respects, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 29, 2019.